### 42347. COLONIAL PIPELINE COMPANY v. UNDERCOFLER, Commissioner.

ARGUED OCTOBER 5, 1966—DECIDED JANUARY 19, 1967.

*Ross Arnold,* for appellant.

*Arthur K. Bolton, Attorney General, William L. Harper, Louis F. McDonald, Assistant Attorneys General,* for appellee.

BELL, Presiding Judge. *Code Ann.* § 92-3402a (b) provides that upon the first instance of use within this state of tangible

personal property purchased at retail outside this state, the owner or user of the property shall be liable for a tax of three percent of *cost price* or fair market value of the property, whichever is the lesser. *Code Ann.* § 92-3405a provides that the owner or user shall pay the tax imposed by *Code Ann.* § 92-3402a (b) *the same as if the property had been sold at retail in this state.* The effect of *Code Ann.* § 92-3405a is to require as far as practicable that the application of the tax upon use (*Code Ann.* § 92-3402a (b)) of tangible personal property purchased outside the state shall be consistent with the application of the tax upon sales (*Code Ann.* § 92-3402a (a)) of tangible personal property at retail inside the state.

It follows that the term "cost price," as used in *Code Ann.* § 92-3402a (b) and as defined in *Code Ann.* § 92-3403a (F) for purposes of the use tax, may be taken as synonymous with the term "sales price," as defined in *Code Ann.* § 92-3403a (E) insofar as "sales price" relates to the sale of tangible personal property rather than to the sale of services. " 'Sales price' means the total amount for which tangible personal property [is sold] . . . *including any services that are a part of the sale* . . . without any deduction therefrom on account of the cost of the property sold, the cost of materials used, labor or service costs, losses or any other expenses whatsoever. . ." *Code Ann.* § 92-3403a (E). Thus, where the in-state or *out-of-state* vendor furnishes services incidental to the sale of tangible personal property, such as delivery to the purchaser, and no additional charge is made for the services so as to constitute a separate sale of services, the services are included in the "sales price," or "cost price," of the property for the purpose of computing the applicable sales or use tax.

The purpose of *Code Ann.* § 92-3403a (C) (2) (j), which provides that the term "sale at retail" shall not include "charges made for the transportation of tangible personal property," is merely to exclude the sale of such services from the application of the *sales tax.* The *use tax* imposed by *Code Ann.* § 92-3402a (b) does not apply to sales of services, irrespective of *Code Ann.* § 92-3403a (C) (2) (j) and similar exclusions from the sales tax. Thus, *Code Ann.* § 92-3403a (C) (2) (j) is not relevant to this case.

Where the vendor of tangible personal property purchased at retail outside this state makes an additional charge for the delivery of the property to Georgia and the vendor and taxpayer contract with reference to this additional charge, this constitutes a separate sale of services. The use tax, since it does not in any event apply to sales of services, is inapplicable. Under these circumstances the services are rendered in connection with the sale of tangible personal property, but the services are not "a part of the sale" so as to be included in "sales price," or "cost price," for the purpose of computing the use tax.

To the extent that the steel companies assumed the expense of transportation of the property without charging taxpayer an additional amount for delivery, the service of delivery was merely a part of the sale of the property and an element of cost price. In other words, to determine "cost price," taxpayer could not deduct from the net price the cost of services unless there was an additional charge made for the services and the steel companies and taxpayer contracted with specific reference thereto.

However, if the steel companies and taxpayer contracted with the understanding that a specific amount of the net price was an additional charge to defray the expense of delivery, the agreement as to delivery of the property would in substance constitute a separate sale of services, and taxpayer would be entitled to deduct this amount from the net price in order to arrive at the "cost price" of the property for use tax purposes.

The "cost price" of the property involved in this case must be determined in the context of the transactions between the steel companies and taxpayer and specific terms of their agreements at the time of the purchases. The stipulations in the record in this case furnish little information as to the terms of these agreements.

Paragraphs 7, 8 and 9 of the stipulations show that $10,-308,968.41 was the mill value, or "undelivered" purchase price, of the property involved in this case. In order to arrive at a "delivered price," the steel companies added $395,039.98 to the mill value. This surcharge obviously was added to defray the

cost of transportation and other *services* involved in delivering the property from the mills to construction sites in Georgia.

However, while the stipulations show that the steel companies used these figures to arrive at the "delivered price" of the property, the stipulations fail to show whether or not the purchase contracts were made with specific reference to separate figures for "mill value" and the additional amount charged. Apparently the stipulations as to these figures are merely information of an agreement between taxpayer and the Commissioner with regard to the steel companies' unilateral bookkeeping, and do not indicate specific terms of the purchase contracts between the steel companies and taxpayer. The stipulations show that the parties contracted with reference to a "delivered price" only.

Under these circumstances the taxpayer has failed to adduce evidence sufficient to rebut the prima facie correctness of the Commissioner's assessment. *Code Ann.* § 92-3432a.

*Judgment affirmed. Jordan, J., concurs. Eberhardt, J., concurs specially.*

EBERHARDT, Judge, concurring specially. Determinative of this appeal is whether the transportation charges are considered to be one of the component factors of cost considered by the seller in arriving at the total cost price charged taxpayer, or whether the transportation charges are deemed to be a surcharge added to the cost price.

" 'Cost Price' means the actual cost of articles of tangible personal property without any deductions thereform on account of the cost of materials used, labor, or service costs, transportation charges, or any expenses whatsoever." *Code Ann.* 92-3403a (F). "Sales price," which is the tax base of the sales tax complementary to the "cost price" of the use tax, is defined as "the total amount for which tangible personal property or services are sold, including any services that are a part of the sale . . . without any deduction therefrom on account of the cost of the property sold, the cost of materials used, labor or service costs, losses or any other expenses whatsoever. . ." Under either definition, for sales and use tax purposes the price of the tangible personal property is deter-

mined and fixed on the basis of the transaction between the purchaser and seller, and the tax base is the total amount paid by the buyer to the seller without deduction for any of the component factors of cost considered by the seller in arriving at the total figure charged the purchaser. In the context of this case the taxpayer's liability depends upon the price at which the steel companies agreed to sell and the taxpayer agreed to purchase the pipe.

It is stipulated that under the terms of the purchase agreement taxpayer "agreed to pay the various steel companies for said pipe *on a delivered price basis.*" (Emphasis supplied). The Commissioner and taxpayer agree that *"the delivered price charged* by the various steel companies was equal to the mill value of the pipe at the respective mills from which the pipe was shipped, plus an additional amount over and above such mill value." (Emphasis supplied.) The majority equates "mill value" with "cost price" or "undelivered purchase price" and states that the "additional amount" over and above the mill value "obviously was added to defray the cost of transportation and other *services* involved in delivering the property from the mills to construction sites in Georgia." I am unable to so construe the stipulation, however, and I would give it effect as it is written—taxpayer "agreed to pay the various steel companies for said pipe on a *delivered price basis,*" and it is this price which is the "cost price" constituting the tax base. The information contained in the stipulation in regard to mill value plus "an additional amount" is merely an agreement between the Commissioner and taxpayer as to how the "delivered price" is made up. Moreover, it is not stipulated that the "additional amount" represents transportation or other service costs; on the contrary, it is stipulated that the transportation charges amounted to $882,484.40, whereas the "additional amount" was stipulated to be only $395,039.98.

Taxpayer relies upon the stipulation that under the terms of the purchase agreement title to pipe passed to taxpayer when it was loaded aboard the carriers. The concept of passing of title may be a relevant factor to be considered along with other

factors when it is not clear on what basis the property was sold. Here, however, it is stipulated that the pipe was sold on a "delivered price basis," and the point at which title to the pipe passed is not relevant.

Taxpayer also relies on *Code Ann.* § 92-3403a (C) (2) (j), which provides that the terms "sale at retail," "use," "storage," and "consumption" shall not include charges made for the transportation of tangible personal property made in connection with interstate and intrastate transportation of such property. This section is not applicable to a situation such as that presented here but refers only to the tax which the *carrier* must collect and remit on the sale of the service of transportation. The Sales and Use Tax Act has provided since its adoption in 1951 that the terms "retail sale" or "sale at retail" (the event upon which the *sales* tax is based) include the sale of transportation. (Ga. L. 1951, pp. 360, 364; *Code Ann.* § 92-3403a (C) (1) (a)). Before the amendment of 1953 (Ga. L. 1953, Jan. Sess., pp. 182, 183; *Code Ann.* § 92-3403a (C) (2) (j)) the sale of transportation of persons and property were both taxable; since this amendment only the sale of transportation of *persons* is taxable. The effect of the amendment is that *carriers* are no longer required to collect and remit a tax on the sale of transportation of tangible personal property. The Commissioner, however, is not seeking to recover a tax on the sale of transportation services by the carriers to the steel companies, but seeks merely to prevent taxpayer from reducing its tax base by an amount equivalent to one of the cost factors considered by the sellers in arriving at the "delivered price" which, under the Act, must be taken as the "cost price."