## 49761. RICH'S, INC. v. BLACKMON.

CLARK, Judge.

The issue is: "Under the Georgia Retailers' and Consumers' Sales and Use Tax Act, does the 'sales price' or 'cost price' paid by the purchaser to the seller include amounts incurred by the seller for transportation of property prior to consummation of the sale?" That is the general query posed by the Attorney General's brief for the State Revenue Commissioner. Able adversary counsel for the appellant representing one of our nation's greatest mercantile establishments, state the question specifically as follows: "Is the Georgia Sales and Use Tax, imposed by Section 2 of the Act (Code Ann. § 92-3402a), applicable to amounts which Rich's separately agreed to pay sellers of tangible personal property for the service of shipping such property to Rich's warehouses and stores in Georgia?" It should be noted that merchandise for resale to store customers is not here involved. The items purchased from both in-state and nonresident suppliers consisted of trade fixtures for use in the Georgia stores and warehouses operated by Rich's. In seeking the proper solution we find it necessary to detail the facts which we adapt from appellant's initial brief.

The subject purchases may be divided and categorized as use tax and sales tax transactions. We summarize these dealings as follows:

*Use Tax Transaction.* In 1969, taxpayer entered extensive negotiations with Lodi-Fab, Inc. of Lodi, California, for the purchase of racking, decking and guide rails which were to be installed in taxpayer's DeKalb County warehouses. These negotiations consisted of a series of offers and counter-offers between Lodi-Fab and taxpayer and culminated in a June 3, 1970 "Fixture Purchase Order" by which taxpayer proposed to purchase the desired trade fixtures for $454,915.75. In addition,

taxpayer separately proposed to pay $114,436.89 for transportation of, and $55,748.23 for installation of, the furnishings. The conditions of the counter-offer, as contained in the purchase order, were "FOB Installed" and "Title and property in all items covered by this order and shipped remain in seller until accepted by Buyer."

In accordance with the terms of taxpayer's proposal, Lodi-Fab arranged with various common carriers for the shipment of the items to taxpayer's warehouses. Lodi-Fab invoiced taxpayer separately for the purchase price of the property and for the actual freight charges incurred in shipment. With one exception, taxpayer remitted payment for the furnishings and freight by separate check. The total amount of the actual freight charges invoiced by Lodi-Fab was $99,704.56. Additionally, taxpayer paid $6,868.50 directly to various common carriers. Thus, upon completion of all shipping, the sum of the actual freight charges invoiced separately to taxpayer by Lodi-Fab and the freight charges paid directly by taxpayer was $106,573.06. As this amount was less than the amount taxpayer had contracted to pay Lodi-Fab, Lodi-Fab submitted a final freight invoice to taxpayer to cover the difference. Taxpayer remitted the amount shown to be due on this final invoice and thereby satisfied its separate contractual obligation to pay Lodi-Fab $114,436.89 for transportation costs.

*Sales Tax Transactions.* The sales tax transactions under consideration involved facts identical in all material respects to those involved in the purchase of carpet racks from Atlanta Bin & Shelving Corporation (hereinafter referred to as "Atlanta Bin").

Taxpayer inquired about the purchase of carpet racks from Atlanta Bin in late 1969 or early 1970. As a result of this inquiry, Atlanta Bin submitted a quotation to taxpayer by letter in which Atlanta Bin proposed to sell certain carpet racks to taxpayer for $20,885. In addition, Atlanta Bin proposed to install the racks for $2,680 and to ship the racks to taxpayer for $726 additionally. Subsequently, the carpet rack quotation was amended to reflect a modification in taxpayer's specifications; but the modification did not affect the separately stated prices for installation and freight. Taxpayer then submitted its

"Fixture Purchase Order" by which it offered to purchase the racks and pay for installation and freight services in accordance with Atlanta Bin's quotation. The contractual conditions of sale, as contained in the purchase order were "FOB Installed" and "Title and property in all items covered by this order and shipped remain in seller until accepted by Buyer." Atlanta Bin accepted taxpayer's offer and invoiced taxpayer for the agreed price. The invoices separately itemized the charges for material, installation and freight and taxpayer paid the amounts shown to be due thereon.

In computing its sales and use tax liability, taxpayer did not include the separately stated transportation charges in the "cost price" or "sales price" of the property purchased in the transactions outlined above. The commissioner determined that the separately stated transportation charges were includable in the tax base and taxpayer had accordingly underpaid its sales and use taxes.

The structure of our sales and use tax is set forth in the Georgia Retailers' and Consumers' Sales and Use Tax Act (Code Ann. Ch. 92-34a). With respect to the sales tax, it provides that "Every purchaser of tangible personal property at retail in this State shall be liable for a tax thereon at the rate of three per cent. of the sales price thereof." Code Ann. § 92-3402a (a). As to the use tax, the Act provides, "Upon the first instance of use, consumption, distribution, or storage within this State of tangible personal property purchased at retail outside this State, the owner or user thereof shall be a dealer hereunder and shall be liable for a tax at the rate of three per cent. of the cost price or fair market value thereof, whichever is the lesser. . ." Code Ann. § 92-3402a (b).

"Sales price" is defined as ". . . the total amount for which tangible personal property or services are sold, including any services that are a part of the sale." Code Ann. § 92-3403a (E). "Cost price" is defined as ". . . the actual cost of articles of tangible personal property without any deductions therefrom on account of the cost of materials used, labor, or service costs, transportation charges or any expenses whatsoever." Code Ann. § 92-3403a (F).

The Georgia use tax scheme has been previously tested in *Colonial Pipeline Co. v. Undercofler,* 115 Ga. App. 58 (153 SE2d 592). In that case, taxpayer purchased pipeline from without Georgia which was transported by carrier to destinations within the state. The pipeline was paid for by taxpayer on a "delivered price basis." Georgia use tax was paid on the amount taxpayer paid to the pipeline sellers less shipping charges which the sellers paid directly to the carriers under the terms of the purchase agreements between taxpayer and sellers. The commissioner determined the taxpayer was liable for use tax on the amount of the freight charges and imposed a deficiency assessment accordingly. In holding that the commissioner properly included the transportation charges in the use tax base, the court reasoned: "To the extent that the steel companies assumed the expense of transportation of the property without charging the taxpayer an additional amount for delivery, the service of delivery was merely a part of the sale of the property and an element of cost price." But, in so ruling, the court gratuitously added that ". . . if the steel companies and taxpayer contracted with the understanding that a specific amount of the net price was an additional charge to defray the expense of delivery, the agreement as to delivery of the property would in substance constitute a separate sale of services, and taxpayer would be entitled to deduct this amount from the net price in order to arrive at the 'cost price' of the property for use tax purposes."

As that quoted sentence from *Colonial Pipeline* was not the ratio decidendi, we must treat it as obiter dictum. Nevertheless, we must recognize it as having been a suggestion worthy of consideration by the bar as expressing the court's view at that date on the basis of adjudications and authorities then presented. Now, in the case under consideration, the taxpayer relies upon that dictum to support its contention that neither the sales nor use tax may be imposed upon the amounts which taxpayer separately agreed to pay Lodi-Fab and Atlanta Bin for the service of transporting the property in question.

In the light of the presentation made by the attorney general supported by the logic and reasoning of two

Florida cases cited in the commissioner's brief, we have chosen to conclude that the *Colonial Pipeline* dictum is not to be followed. Although taxpayer's counsel have pointed out some variations in the Florida law from our Georgia legislation, a comparison of the principal clauses applicable to the case sub judice proves that our neighboring state's statute as to these provisions are not only in pari materia but actually identical. As pointed out by appellant, we are not bound to accept foreign decisions, but we trust we are not so provincial nor chauvinistic as to limit ourselves to the geographical area ranging from Rabun Gap to Tybee Light. The two Florida decisions which we deem to present the correct answer to the queries presented in the opening paragraph of this opinion are United States Gypsum Co. v. Green, 110 S. 2d 409 and Whitehead & Kales Co. v. Green, 113 S. 2d 732.

In United States Gypsum, freight charges were incurred by the taxpayer as separate items of expense after the "moment of purchase" of tangible property which was transported to Florida for use in that state. In ruling that the transportation charges were not included in the cost price of the property for use tax purposes, the Supreme Court of Florida said: " We make clear that the decision we have reached as to the non-taxability of the freight charges is predicated on the fact that the purchase of the personalty transported was consummated and title passed . . . prior to the occurrence of the freight charges. If the purchase had been f. o. b. a point in Florida the freight charges might well have been included as a part of the cost or purchase price and therefore taxable, but the issue is not before us and we do not decide it now." Id. p. 416.

The issue which the Gypsum court gratuitously injected was presented for decision in Whitehead & Kales Co., supra. There the District Court of Appeal of Florida ruled that where the contract called for finished structures at a Florida site, and the transportation costs were not incurred after consummation of the transaction, the costs were included in the cost price and taxable.

Thus, in Gypsum and Whitehead, the Florida courts adopted a "moment of purchase" test whereby freight charges incurred before the consummation of the transaction were included within the cost price of the

property and freight charges incurred after the consummation of the transaction were excluded from the cost price of the property. This "moment of purchase" test is based upon the legislative intent manifest in the Florida tax scheme "Which specifies the time at which the cost price shall be determined by providing that the use tax shall be collected at the rate of: '. . . three percent of the cost price, *as of the moment of purchase . . .'*" United States Gypsum, supra, p. 415.

That same legislative intention is manifested in our Georgia sales and use tax structure: "The aforesaid tax at the rate of three per cent. of the retail sales price, as of the moment of sale, or three per cent. of the cost price, as of the moment of purchase, as the case may be. . ." Code Ann. § 92-3404a. Accordingly, we think a "moment of sale" or "moment of purchase" test should be applied to Georgia sales and use tax computations respectively. Compare our conclusion with that reached in the 1970 Louisiana case of Mouton v. Klatex, Inc., 238 S. 2d 1, wherein it was noted that no "moment of purchase" directive is embodied within the Louisiana Sales and Use Tax Law.

We add that we deem the "moment of sale" or "moment of purchase" test inherently more sound than that found in the *Colonial Pipeline* dictum. As trade fixtures and similar items are purchased with the intention to be installed and used in the Georgia mercantile establishment a ruling other than as herein made would be contrary to normal arrangements and create an aura of artificiality. Under the standard urged by taxpayer, the sales and use tax base could be arbitrarily reduced simply by contracting separately for transportation charges. A more structured and realistic criterion is presented, however, where the inclusion of freight costs in the tax base is dependent upon the point of sale of the personalty purchased which property the parties intend to be used in Georgia as an installed or finished product.

The terms of the purchase order contracts in the sales and use tax transactions sub judice ("FOB Installed" and "Title and property in all items covered by this order and shipped remain in seller until accepted by Buyer") demonstrate the transactions were consummated in

Georgia and the freight charges were therefore incurred before the consummation of the transactions, i.e., "moment of sale" or "moment of purchase." Accordingly, the transportation charges should have been included in the tax bases of the property purchased and the commissioner's deficiency assessments were properly imposed.

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*

ARGUED OCTOBER 7, 1974 — DECIDED JANUARY 7, 1975.

*King & Spalding, Jack H. Watson, Jr., Michael C. Russ, William F. Nelson,* for appellants.

*Arthur K. Bolton, Attorney General, Robert S. Stubbs, II, Executive Assistant Attorney General, Richard L. Chambers, H. Perry Michael, Gary B. Andrews, Assistant Attorneys General,* for appellee.