STONE *v.* ROGERS.

(Division A.  June 12, 1939.  Suggestion of Error Overruled July 8, 1939.)

[189 So. 810.  No. 33749.]

J. A. Lauderdale, Assistant Attorney-General, for appellant.

**Hugh N. Clayton,** of New Albany, for appellee.

Argued orally by **J. A. Lauderdale,** for appellant, and by **Hugh N. Clayton,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

Under the provisions of chapter 119, Laws of 1934, and acts amendatory, the appellant demanded certain taxes from the appellee. Rogers paid said taxes under protest, and filed his suit at law to recover said taxes.

The cause was tried on the declaration, plea and agreed statement of facts by the Circuit Judge, who found that Rogers was not liable for the taxes assessed and collected,

and entered judgment for the amount thereof in favor of appellee against the appellant, from which judgment this appeal is taken.

"It is further agreed that the facts are as follows:

"That the facts alleged in the declaration are true and correct as stated therein except in so far as they may be in conflict with facts hereinafter stated.

"That when a farmer had his cotton ginned by the plaintiff and wished to exchange the cottonseed for cottonseed meal, the plaintiff would have this farmer's cottonseed blown into a same seed house owned by plaintiff and he would give the farmer a ticket on which was indicated the amount of seed so received and its value; that the farmer to whom said ticket was issued then had the right to receive cash to the amount stated therein, or subsequent thereto, had the right to receive therefor cottonseed meal of the same value as the value of the cottonseed stated therein, or cottonseed to the amount stated therein, if there was no cottonseed meal available at that time; that the plaintiff also bought cottonseed from farmers and that he had the cottonseed which he bought outright blown into the same common seed house; that, when he had received a sufficient amount of cottonseed from both of these sources to make up a railroad box car load, he would then ship the cottonseed to a cotton oil mill which paid him cash for the entire car of cottonseed; that the bill of lading contained the plaintiff's name as consignor and the cotton oil mill as consignee.

"That the plaintiff would order in his own name and pay for cottonseed meal from the cotton oil mill; that this meal, when received, was held subject to the order of the farmers who had previously deposited cottonseed to be exchanged for cottonseed meal and that it was delivered to them in accordance with the provisions on their tickets showing the amount and value of the seed previously deposited; that the plaintiff did not receive or purchase cotton seed meal in exchange for the cotton seed that he had purchased and shipped to the cotton oil mill

but that he received cash from the cotton oil mill for the seed; that the only meal purchased was the meal which was exchanged for the cottonseed previously deposited in the manner aforesaid.

"That this method of handling the exchange of cottonseed for cottonseed meal was devised by the plaintiff as the simplest way, from a bookkeeping standpoint, to carry out the transaction; that by this arrangement, the only records required to be kept by the plaintiff were those relating to the deposit of cottonseed by the farmers and the receipts for cottonseed meal; that the farmers had a complete right to call for their cottonseed meal, whenever they wished after they had deposited their cottonseed so due them, and if the plaintiff did not have the said cottonseed meal available, it was the right and sometimes the practice of the farmers to remove from the cottonseed house the same amount of cottonseed they had deposited which they would take and deal with as they wished.

"That plaintiff made no profit in exchanging cottonseed for cottonseed meal, but the exchange was made by him because it was the universal custom of all cotton gins in Union County to do so.

"A copy of a cottonseed ticket, marked Exhibit 'A,' and a copy of a receipt for cottonseed meal, marked Exhibit 'B,' are hereto attached and made a part hereof as if fully copied herein."

The declaration alleged in substance that prior to 1936 the County Agricultural Agent had, as agent for the farmers of the county, requested the growers to ship the cottonseed of farmers to the oil mills and receive therefor cottonseed meal which, when received, was delivered to the farmers as their interest appeared by the county agent. The county agent took no part in the operation involved in this suit.

The declaration further alleged as a conclusion on the facts that Rogers was "merely a medium of and agent

for the exchange of said cottonseed for cottonseed meal for said farmer.''

The tickets issued by Rogers showed the date the cotton was ginned, the gross weight, the weight of the lint cotton, the tare, the weight of the seed, and then appeared: ''Seed Sold (pounds of seed) at $——— (Meal).'' Then when the meal was delivered to the farmer, a notation was made on his ticket showing the number of whole sacks of seed and the amount of cash paid to effect the deal for less cottonseed than would equal a whole sack of meal.

Section 2 of chapter 119, Laws of 1934, is in part as follows:

''There is hereby levied and shall be collected annual privilege taxes, measured by the amount or volume of business done, against the persons, on account of the business activities, and in the amounts to be determined by the application of rates against values, or gross income, or gross proceeds of sales, as the case may be, as follows:

''Upon whom levied.  .  .  .

''Sec. 2-c.  Upon every person engaging or continuing within this state in the business of selling any tangible property whatsoever, real or personal (not including, however, bonds or other evidence of indebtedness or stocks), there is likewise hereby levied, and shall be collected, a tax equivalent to two per cent of the gross proceeds of sales of the business;  .  .  .''

In section 1 of chapter 119, the following definitions were enacted:

''Definitions.  .  .  .

''The term 'sale' or 'sales' includes the barter or exchange of properties as well as the sale thereof for money, every closed transaction constituting a sale.

''The word 'taxpayer' means any person liable for any tax hereunder.

''The term 'gross income' means the gross receipts of a taxpayer received as compensation for personal services

for the exercise of which a privilege tax is imposed in this state and the gross receipts of the taxpayer derived from trades, business, commerce or sales and the value proceeding or accruing from the sale of tangible property (real or personal), or service, or both. . . .

"The term 'gross proceeds of sales' means the value proceeding or accruing from the sale of tangible property without any deduction on account of the cost of property sold, expenses of any kind, or losses; provided, however, that cash discounts allowed and taken on sales shall not be included as gross income. . . ."

From the statement of facts, we deduce the following inescapable conclusions: That when Rogers ginned cotton for a farmer, the separated seed were blown into the ginners seed house, and a ticket issued therefor. The farmer's compensation was an equal value of meal, the title to the cottonseed being vested in the appellee. Such cottonseed was commingled with the seed he had purchased, and for which he paid cash. The ginner, as consignor, when he had a car-load, shipped the cottonseed to the consignee; and from the latter he collected the value thereof in cash. The ginner then bought cottonseed meal by the car-load and paid therefor, and had same shipped to him. Thereupon, he, the appellee, paid to the farmer in cottonseed meal the value of his cottonseed.

The farmer was thus enabled to get his cottonseed meal at wholesale prices, and appellee made no profit on the transaction.

It is the precise contention of the Attorney-General on behalf of the Chairman of the State Tax Commission that the transaction between the ginner and the customer constitutes simply a barter of cottonseed for cottonseed meal, and that therefore the excise tax is imposed upon the appellee under the definition of "sale" set forth in the act here involved.

It is the precise contention of the appellant that Rogers, the ginner, simply acted as agent for the farmer in

procuring for him the value of his cottonseed in cottonseed meal, which contention he insists is reinforced by the fact that the appellee made no profit on the transaction, and that the parties benefited were the farmers with whom the exchange was made by the appellee, and the oil-mills to whom the cottonseed was sold, and from whom the cottonseed meal was purchased. It seems to be argued that when the farmer delivered the cottonseed to the ginner he did not simultaneously receive in exchange therefor an equal value in cottonseed meal; but that an interval of time elapsed between the delivery of the cottonseed and the receipt of its value in cottonseed meal.

The tax here sought to be imposed is a privilege or excise tax. Such "Laws are to be strictly construed against the taxing power. The power cannot be implied. All doubts must be resolved in favor of the taxpayer. Miller v. Illinois Cent. R. Co., 146 Miss. 422, 111 So. 558; State ex rel. Collins v. Grenada Cotton Compress Co., 123 Miss. 191, 85 So. 137; Board of Levee Commissioners v. Howze Mercantile Co., 149 Miss. 843, 116 So. 92." See, also, Wilby v. State, 93 Miss. 767, 47 So. 465, 23 L. R. A. (N. S.), 677; and State ex rel. Rice v. Louisiana Oil Corporation, 174 Miss. 585, 165 So. 423.

The definition of "gross proceeds of sale" clearly demonstrates that the fact of profit or not does not enter into the taxing of the gross proceeds of sale under this act. The tax is levied without regard to profit.

Nor can it be said that because the exchange of cottonseed for cottonseed meal was not immediately consummated that the transaction did not constitute a barter, for the reason that the term "sale" includes the barter or exchange of properties as well as the sale thereof for money, every closed transaction constituting a sale.

If it be said that the barter was not a simultaneous one, the Legislature by this definition having declared that the word "sale" in the act here involved includes the

barter, also, at the same time determined that every closed transaction constitutes a sale.

We are of opinion, therefore, that the transaction detailed by the facts here disclosed that when the farmer received the ticket showing the amount of meal he was to receive for his cotton seed, after the cottonseed had been blown into the seed room of the ginner and there commingled with seed which he had purchased for cash, constituted a complete delivery of the cottonseed and invested the ginner thereof with title without reservation, expressed or implied. In fact, the seed ticket shows no reservation. Thereupon, the ginner, dealing with his own property, sold the cottonseed as and when he pleased, and received the cash therefor from the purchaser thereof. The ginner, with his money, bought the cottonseed meal, and complied with his contract by delivering value in cottonseed meal to the farmer who held the ticket showing the value of his cottonseed. There is not disclosed in this record any control of the cottonseed after delivery to the ginner and acceptance of the ticket; and, under the definition of "sale," the barter was certainly a complete transaction when the cottonseed meal was delivered to the farmer in discharge of the obligation shown by the ticket issued to him. This is a simple case of barter. In other words, the farmer swapped his cottonseed to the ginner, Rogers, for the latter's cottonseed meal.

Webster's International Dictionary (2 Ed.), defines the word "barter" as follows: "To traffic or trade by exchanging one commodity for another as distinguished from selling one commodity and purchasing another through the use of money or some other medium of exchange." We therefore find no room for doubt that the transaction, as detailed in the agreed statement of facts and in the declaration, was simply a barter of one commodity for another, fully consummated; and under the controlling act such a barter is a sale. The argument that the ginner, Rogers, was the agent of the farmer to

get cottonseed meal in exchange for his cottonseed cannot be applied to the facts here in construing this statute. The argument is ingenious, but the language of the act applied to the facts leaves no question of doubtful construction.

Whatever may have been the relation of the County Agent to the farmers, we are not called upon here to say, but certain it is that the facts here disclosed no agency of any kind but the same kind of barter which occurs when two men exchange horses, one delivered at the time and the one received in exchange delivered on a subsequent day; or, to illustrate further, a farmer carries his eggs to a third person, the value is placed thereon, the farmer does not desire cash for his produce but desires to receive the value of his produce in coal-oil; the merchant is expecting coal-oil to come in on a later date, gives the farmer a ticket for his eggs to be paid for in coal-oil, and on a subsequent day the farmer presents his ticket and gets his value in coal-oil. That is a barter, and the facts of this case reveal just such a transaction. However, as much sympathy as we may have for the ginners of the county who have indulged in this custom, the barter is taxable as a sale, and the parties have not dealt in such manner as to relieve the ginner from the tax.

Our attention is called in argument to the many provisions of the Sales Tax Act, chapter 119, Laws of 1934, which exempted the farmer from tax on his produce under certain conditions, but it does not follow that the party who barters with the farmer and gives him commodity for his produce commodity is thereby relieved from the tax. Legally, the effect is the same as any other barter that can be imagined, and the fact that the Legislature in this act defined a barter as a sale demonstrates that the Legislature, in its wisdom, designed to tax the barterer and not the farmer who sold his produce. In other words, the tax is levied upon the amount received in value for the goods. In the case at bar, cottonseed

meal delivered for the cottonseed. The appellant, in our opinion, properly levied and collected the tax in this case; and under the views here expressed, the appellee was not entitled to recover from him the amount of said tax legally imposed.

Reversed and judgment here for the appellant.