# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CC-01726-SCT

*BAY ST. LOUIS COMMUNITY ASSOCIATION , PRESERVE DIAMONDHEAD QUALITY, INC., GULF ISLANDS CONSERVANCY, INC. AND CONCERNED CITIZENS TO PROTECT THE ISLES AND POINT, INC.*

*v.*

*COMMISSION ON MARINE RESOURCES AND CASINO WORLD, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/11/2000 |
| TRIAL JUDGE: | HON. J. N. RANDALL, JR. |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | REILLY MORSE |
| ATTORNEYS FOR APPELLEES: | JOSEPH A. RUNNELS, JR. |
| | TERESE T. WYLY |
| | BEN HARRY STONE |
| | DAVID W. LAMBERT |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 10/18/2001 |
| MOTION FOR REHEARING FILED: | 11/1/2001; denied 3/7/2002 |
| MANDATE ISSUED: | 3/14/2002 |

### BEFORE PITTMAN, C.J., SMITH AND WALLER, JJ.

### SMITH, JUSTICE, FOR THE COURT:

¶1. This appeal arises from a decision of an administrative agency affirmed on appeal to the Chancery Court of Hancock County. On August 20, 1996, the Commission of Marine Resources (CMR), issued a Use Plan Adjustment and Permit to Casino World, Inc. (Casino World). On September 18, 1996, Bay St. Louis Community Association, Preserve Diamondhead Quality, Inc., Gulf Islands Conservancy, Inc., and Concerned Citizens to Protect the Isles and Point, Inc., the Appellants herein, filed a notice of appeal and complaint against CMR, Hancock County Port and Harbor Commission, and Casino World in the Chancery Court of Hancock County. On October 16, 1996, Casino World and the Hancock County Port and Harbor Commission filed a Joint Motion to Dismiss for Untimely Appeal in which they alleged the appellants had failed to file their Notice of Appeal and Complaint within the proper time period. This joint motion was granted on December 31, 1996. On January 15, 1997, the appellants filed another notice of appeal, appealing the dismissal by chancery court. On July 23, 1998, this Court reversed the decision of the chancery court and remanded the case for a hearing on the merits. *Bay St. Louis Community Ass'n v. Commission on Marine Resources*, 729 So. 2d 796 (Miss. 1998). This Court denied Casino World's motion for rehearing on October 15, 1998. The chancery court conducted a hearing on the merits, on June 22, 2000.

¶2. On September 12, 2000, the chancery court affirmed the decision of the CMR to grant the variance and permit to Casino World. The appellants timely filed a notice of appeal to this Court.

# FACTS

¶3. Casino World owns the riparian right to a previously undeveloped site along the northern shore of the Bay of St. Louis near Diamondhead, Mississippi. Casino World proposes to construct a casino-centered, destination resort complex on the property just west of the Hancock-Harrison County line in Hancock County Mississippi. This project consists primarily of a permanently-moored in water casino gaming vessel and associated land-based facilities, including a 450-room hotel, a nine-hole golf course, a tennis complex, a recreational vehicle park, and a 2,000-seat entertainment/sports arena.

¶4. The access road, which will be constructed from Yacht Club Drive at the Diamondhead Exit of Interstate 10, will include bridges spanning over 7,602 linear feet of non-tidal wetlands. One of the bridges will span over 493 linear feet of the tidal wet lands and 520 linear feet of open water. The bridges will be elevated and constructed on concrete pilings driven from the top of the bridge sections. The gazebo, porte cochere and casino barges will cover 4.7 acres of water bottom. The permit issued to Casino World by the CMR requires that Casino World must mitigate for the unavoidable impacts from shading of wetlands and water bottoms, and therein agreed to construct 7.10 acres of artificial fishing reef by placing concrete rubble at specified locations in accordance with the Mississippi Department of Marine Resources Artificial Reef Plan.

¶5. Public notice of the project was given, and approximately 250 people attended a public hearing held on July 2, 1996. Comments at this hearing, as well as written correspondence, both favored and opposed this project. The Hancock County Board of Supervisors, along with the County Library System, passed a resolution in support of the project.

¶6. On July 16, 1996, the matter came on for hearing before the CMR at its monthly meeting. The CMR approved Casino World's application as presented. Following this meeting, the appellants filed a petition for reconsideration. On August 20, 1996, the CMR considered this matter again, wherein it denied each of the petitions for reconsideration.

¶7. The chancery court affirmed the decision by CMR to allow the use adjustment, variance and permit. The appellants raise five issues on appeal:

**I. CMR'S DECISION WAS ARBITRARY AND CAPRICIOUS BECAUSE IT FAILED TO REQUIRE PERMITTING AND VARIANCES FOR A "REGULATED ACTIVITY," DREDGING, THAT IS NECESSARY FOR CASINO WORLD TO MEET THE SIX-FOOT DRAFT REQUIREMENT OF THE GAMING CONTROL ACT.**

**II. CMR'S DECISION NOT TO REQUIRE DREDGING WAS PER SE ARBITRARY AND CAPRICIOUS BECAUSE IT VIOLATED THE AGENCY'S OWN RULE THAT MULTIPLE ACTIVITIES ASSOCIATED WITH THE SAME PROJECT SHALL BE INCLUDED ON ONE PERMIT APPLICATION.**

**III. CMR'S DECISION WAS PER SE ARBITRARY AND CAPRICIOUS BECAUSE IT FAILED TO ADDRESS DREDGING IMPACTS IN ITS CONSIDERATION OF THE FULL EXTENT OF THE PROJECT.**

**IV.** *CONCERNED CITIZENS TO PROTECT ISLES AND POINT v. MISSISSIPPI*

*GAMING COMM'N* REQUIRES CASINO WORLD TO DREDGE IN ORDER TO MEET THE SIX-FOOT DRAFT REQUIREMENT.

**V. CMR ACTED ARBITRARILY AND CAPRICIOUSLY BECAUSE IT DISREGARDED UNCONTROVERTED EVIDENCE THAT THE MISSISSIPPI GAMING COMMISSION'S SITE APPROVAL WAS PREDICATED ON CASINO WORLD'S VESSELS MAINTAINING A SIX-FOOT DRAFT UNDER ORDINARY TIDAL CONDITIONS.**

## STANDARD OF REVIEW

¶8. The case at bar is strikingly similar to *Concerned Citizens to Protect the Isles & Point, Inc. v. Miss. Gaming Comm'n*, 735 So. 2d 368, 373 (Miss. 1999) ("*Concerned Citizens*"), in which this Court described the standard of review as follows:

> This Court affords great deference to an administrative agency's construction of its own regulations. *Mississippi Gaming Comm'n v. Board of Educ.*, 691 So. 2d 452, 455 (Miss. 1997); *Mississippi Dep't of Envtl. Quality v. Weems*, 653 So. 2d 266, 273 (Miss. 1995). This deference will be of "no material force where the agency action is contrary to the statutory language." *Casino Magic Corp. v. Ladner*, 666 So. 2d 452, 459 (Miss. 1995) (quoting *Gill v. Mississippi Dep't of Wildlife and Consevation*, 574 So. 2d 586, 593 (Miss. 1990)). A Commission order may be reversed if the petitioner's rights were prejudiced because the decision was "(a) [i]n violation of constitutional provisions; (b) [i]n excess of statutory authority or jurisdiction of the commission; (c) [m]ade upon unlawful procedure; (d) [u]nsupported by any evidence; or (e) arbitrary or capricious or otherwise not in accordance with law." Miss. Code Ann. § 75-76-125(3) (1991). A decision of the Commission on Marine Resources, similarly, shall be affirmed if it is "supported by substantial evidence, consistent with the public policy set forth in this chapter, is not arbitrary or capricious and does not violate constitutional rights...." Miss. Code Ann. § 49-27-39(b) (1973).

The same standard of review governs our decision in the instant case.

## DISCUSSION

**I. CMR'S DECISION WAS ARBITRARY AND CAPRICIOUS BECAUSE IT FAILED TO REQUIRE PERMITTING AND VARIANCES FOR A "REGULATED ACTIVITY," DREDGING, THAT IS NECESSARY FOR CASINO WORLD TO MEET THE SIX-FOOT DRAFT REQUIREMENT OF THE GAMING CONTROL ACT.**

**II. CMR'S DECISION NOT TO REQUIRE DREDGING WAS PER SE ARBITRARY AND CAPRICIOUS BECAUSE IT VIOLATED THE AGENCY'S OWN RULE THAT MULTIPLE ACTIVITIES ASSOCIATED WITH THE SAME PROJECT SHALL BE INCLUDED ON ONE PERMIT APPLICATION.**

**III. CMR'S DECISION WAS PER SE ARBITRARY AND CAPRICIOUS BECAUSE IT FAILED TO ADDRESS DREDGING IMPACTS IN ITS CONSIDERATION OF THE FULL EXTENT OF THE PROJECT.**

**V. CMR ACTED ARBITRARY AND CAPRICIOUSLY BECAUSE IT DISREGARDED**

**UNCONTROVERTED EVIDENCE THAT THE MISSISSIPPI GAMING COMMISSION'S SITE APPROVAL WAS PREDICATED ON CASINO WORLD'S VESSELS MAINTAINING A SIX-FOOT DRAFT UNDER ORDINARY TIDAL CONDITIONS.**

¶9. The appellants argue that the CMR's decision is arbitrary and capricious for failing to consider numerous issues dealing with dredging. The four issues on appeal addressed above by the appellants are concerned with the six-foot draft requirement of Miss. Code Ann. § 27-109-1 (2000). This statute provides, in relevant part:

> (1) The provisions of this chapter shall be administered by the **State Tax Commission**, which shall administer them for the protection of the public and in the public interest in accordance with the policy of this state.

> (2) .... For the purposes of this chapter, the term "cruise vessel" shall mean a vessel which complies with all U.S. Coast Guard regulations, having a minimum overall length of one hundred fifty (150) feet and a **minimum draft of six (6) feet** and which is certified to carry at least two hundred (200) passengers.....

(emphasis added). Administrative agencies have only those powers expressly granted, or necessarily implied, within the four corners of the statute under which the agency operates. *Dean v. Public Employees' Ret. Sys.*, No. 98-CT-00033-SCT, 2000 WL 1864480 at *3 (Miss. Dec. 21, 2000). In 1990 the Mississippi Legislature passed Miss. Code Ann. § 75-76-7 (2000), which created the Mississippi Gaming Commission (MGC). This statute provides the MGC with the authority "to determine the locations of casinos which wish to build in the Gulf Coast area." *Concerned Citizens,* 735 So.2d at 377 (quoting *Mississippi Casino Operators Ass'n v. Mississippi Gaming Comm'n,* 654 So. 2d 892, 894 (Miss. 1995)). The MGC's authority further extends to the interpretation of Miss. Code Ann. § 27-109-1(2) as was addressed in *Concerned Citizens,* 735 So. 2d at 375. Therefore, the issue of dredging to meet the six-foot draft requirement should have been decided by the MGC. Section 27-109-1(1) gives sole authority to the State Tax Commission to interpret and administer the provisions of that chapter. According to Miss. Code Ann. § 75-76-5(f), the State Tax Commission, as used in § 27-109-1(1), shall mean, after September 30, 1993, the Mississippi Gaming Commission.

¶10. The appellants contend that the CMR's decision was arbitrary and capricious due to its failure to consider the issue of dredging. The appellants allege that in order to meet the six-foot draft requirement of § 27-109-1(2), Casino World will have to dredge, even though it is uncertain whether or not the MGC required this.

¶11. Inasmuch as the appellants place the burden of interpreting the draft requirement on the CMR, Miss. Code Ann. § 49-15-11 states: "(1) The Mississippi Department of Marine Resources is hereby established and full power is vested in the department to manage, control, supervise, enforce and direct any matters pertaining to saltwater aquatic life and marine resources under the jurisdiction of the commission...." Neither this statute nor any precedent mentions any authority of the CMR to enforce any of the Mississippi Gaming Act controls. Accordingly, this statutory language does not grant to the CMR the authority to interpret § 27-109-1. Albeit, this statute would allow the CMR, as provided in the Mississippi Coastal Program, to decide whether to issue a dredging permit to Casino World, if the MGC required dredging to meet the draft requirement. Miss. Coastal Program, Chapter 8, § 2 Part 1, B. However, it is uncertain whether the MGC

required Casino World to dredge to meet the draft requirement because MGC's record is not before this Court. Nevertheless, MGC did write two letters to the CMR concerning the draft requirement stating that it was informed that a naturally occurring trench would allow the casino to meet this requirement, but these letters did not mention dredging. Using these letters as a basis for their argument, the appellants ask this Court to reverse the CMR's decision, or to remand to the CMR for further consideration.

¶12. An administrative body makes an arbitrary and capricious decision when an agency makes a decision unsupported by evidence. *Davis v. Public Employees' Ret. Sys.*, 750 So. 2d 1225, 1230 (Miss. 1999). An administrative act is "arbitrary" when it is not done according to reason or judgment, but depending on the will alone. *Burks v. Amite County Sch. Dist.*, 708 So. 2d 1366, 1370 (Miss. 1998). An administrative act is capricious when done without reason, in a whimsical manner, implying either lack of understanding or a disregard for the surrounding facts and settled controlling principles. *Id.* Furthermore, a reviewing court may not substitute its own judgment in place of the agency's decision and may not reweigh the evidence. *Melody Manor Convalescent Ctr. v. Mississippi State Dep't of Health*, 546 So. 2d 972, 974 (Miss. 1989).

¶13. After reviewing the record of the July 16, 1996, meeting of the CMR, it is clear that the CMR's decision was supported by sufficient evidence. It is also apparent that the CMR gave considerable consideration to the issue of dredging, but since it was not required by the MGC a permit was not issued.

¶14. The CMR's decision was not arbitrary and capricious. Furthermore, we find that had the CMR taken the six-foot draft requirement into consideration, its decision would have been in excess of its statutory authority in accordance with Miss. Code Ann. § 49-15-11. The appellants urge this Court to remand for further consideration. However, to allow the CMR to consider whether Casino World will have to dredge before it can lawfully build its casino at this location would be in excess of the statutory authority granted to the CMR and would also intrude upon MGC's statutory authority to decide these matters. Therefore, the decision of the CMR is affirmed.

> ### IV. *CONCERNED CITIZENS TO PROTECT ISLES AND POINT v. MISSISSIPPI GAMING COMM'N* REQUIRES CASINO WORLD TO DREDGE IN ORDER TO MEET THE SIX-FOOT DRAFT REQUIREMENT.

¶15. The appellants contend that *Concerned Citizens* requires Casino World to dredge in order to meet the six-foot draft requirement. This interpretation is incorrect. The decision in *Concerned Citizens* does not mandate that a developer dredge to meet the six-foot draft requirement of the statute. *Concerned Citizens* establishes that dredging is allowable in order to meet the six-foot draft requirement, as long as the casino is located in the waters of Bay of St. Louis. *Concerned Citizens*, 735 So. 2d at 375. This Court went on to say, "The deciding factor is not the depth of the waters in their **'unimproved'** state, ... rather it is where the waters are located." *Id.* at 376 (emphasis added).

¶16. This issue is without merit.

### CONCLUSION

¶17. The decision of the Commission on Marine Resources was not arbitrary and capricious. The Mississippi Gaming Commission's decision was arbitrary and capricious in that it did not give adequate guidance to the Commission on Marine Resources concerning the six-foot draft requirement. Most of the

issues in this case focus around the meaning of the word "draft" as used in § 27-109-1(2). The appellants suggest that the term means the depth of the water the vessel will be moored in. On the other hand, the appellees suggest that the term means the depth of the vessel's hull. As stated by the applicable standard of review, the interpretation of an agency's statute will be left to the agency unless its interpretation is contrary to statutory language. The problem is that this Court does not know what MGC's interpretation is. However, Miss. Code Ann. § 75-76-121 bars the appellants from appealing the MGC's decision granting site approval to Casino World. Section 75-76-121 states, in pertinent part:

(1) Any person aggrieved by a final decision or order of the commission may obtain judicial review thereof in the circuit court of the county in which the petitioner resides or has his or its principle place of business.

(2) The judicial review must be instituted by filing a petition within twenty (20) days after the effective date of the final decision or order...

On June 15, 1995, the MGC granted site approval for the Casino at issue to Casino World. The appellants did not take any action against the MGC's decision until May 16, 1997. Therefore, to remand the case for further consideration by the MGC would be in violation of § 75-76-121. For these reasons, the judgment of the Hancock County Chancery Court is affirmed.

¶18. **AFFIRMED.**

**PITTMAN, C.J., BANKS, P.J., MILLS, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULTS ONLY.**