# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-SA-01079-SCT

*MISSISSIPPI DEPARTMENT OF REVENUE*

*v.*

*TENNESSEE GAS PIPELINE COMPANY, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/30/2023 |
| TRIAL JUDGE: | HON. TAMETRICE EDRICKA HODGES |
| TRIAL COURT ATTORNEYS: | JOHN STEWART STRINGER |
| | NICHOLAS ALEXANDER LOMELI |
| | JOHN FLOYD FLETCHER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | BRIDGETTE TRENETTE THOMAS |
| | NICHOLAS ALEXANDER LOMELI |
| ATTORNEY FOR APPELLEE: | JOHN FLOYD FLETCHER |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 05/01/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE COLEMAN, P.J., GRIFFIS AND BRANNING, JJ.**

**BRANNING, JUSTICE, FOR THE COURT:**

¶1. The Hinds County Chancery Court issued an order granting summary judgment in favor of Tennessee Gas Pipeline Company, LLC (Tennessee Gas), finding that the Mississippi Department of Revenue (MDOR) improperly assessed Tennessee Gas with use tax on freight charges paid to a third-party carrier. MDOR now appeals.

## FACTS AND PROCEDURAL HISTORY

¶2. The facts of this case are undisputed. Tennessee Gas provides natural gas transportation services through a set of natural gas pipelines that stretches from the Gulf of

Mexico region to the northeastern United States. Tennessee Gas purchased certain tangible personal property from a seller to use in Mississippi and paid use tax on these purchases. But Tennessee Gas later paid freight charges to a third-party company to ship these goods to Mississippi. Tennessee Gas did not include the freight charges in its tax base for the use tax calculation on the goods purchased.

¶3. MDOR conducted a use-tax audit of Tennessee Gas for the period of November 1, 2016, through November 30, 2019. As a result of the audit, MDOR assessed Tennessee Gas use tax on the freight charges. Tennessee Gas appealed the assessment first to MDOR's Board of Review and then to the Board of Tax Appeals (BTA), arguing that the freight charges were not taxable under Mississippi Code Sections 27-67-3 and -5 (Rev. 2024) because the freight charges constituted a transaction separate from the purchase of tangible personal property. The BTA agreed with the position of Tennessee Gas that the freight charges should not be subject to use tax.

¶4. MDOR appealed the BTA's order to the Hinds County Chancery Court raising two assignments of error. First, MDOR argued that the BTA misapplied Mississippi Code Section 27-65-19 (Rev. 2024) and Sections 27-67-3 and -5 when determining that freight charges are only subject to use tax when such charges are paid directly to the seller of the tangible personal property and not when such charges are paid to a third party. Second, MDOR argued that the BTA incorrectly determined that MDOR's Fact Sheet regarding the taxability of delivery charges was not an "officially adopted publication" and thereby subject to deference by the BTA under Mississippi Code Section 27-77-5 (Rev. 2024).

¶5.    MDOR filed a Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment.  Tennessee Gas filed a Cross Motion for Summary Judgment. Following a hearing, the chancery court granted Tennessee Gas's Cross Motion for Summary Judgment.  MDOR now appeals the chancery court's decision.

## STANDARD OF REVIEW

¶6.    This Court uses a *de novo* standard of review for summary judgment motions. ***Builders & Contractors Ass'n of Miss. v. Laser Line Constr. Co., LLC***, 220 So. 3d 964, 965 (Miss. 2017) (quoting ***U.S. Fid. & Guar. Co. v. Martin***, 998 So. 2d 956, 962 (Miss. 2008)). Also, "[i]ssues related to tax appeals are questions of law, which are reviewed by this Court *de novo*." ***Miss. Dep't of Revenue v. Comcast of Ga./Va., Inc.***, 300 So. 3d 532, 535 (Miss. 2020) (citing ***Miss. Dep't of Revenue v. Hotel & Rest. Supply***, 192 So. 3d 942, 945 (Miss. 2016)).

## DISCUSSION

I.    **Whether MDOR met its burden of proving its statutory power to tax Tennessee Gas for freight charges paid to a third party.**

¶7.    The main question before this Court is whether MDOR met its burden of proving that it has the power to impose taxes for freight charges paid to third-party carriers rather than to the seller of the purchased goods.  "[U]nder Mississippi law, it is clear that MDOR carries the burden to establish that a particular transaction falls within its statutory power to tax." ***Castigliola v. Miss. Dep't of Revenue***, 162 So. 3d 795, 799 (Miss. 2015) (citing ***Stone v. Rogers***, 186 Miss. 53, 189 So. 810, 812 (1939)).  If MDOR fails to do so, the transaction will avoid taxation. *Id.* MDOR's power to impose taxes, such as the use tax, must not be implied

3

as this Court interprets our tax statutes in a light most favorable to the taxpayer, not the taxing authority. *Id.* But if MDOR successfully establishes its taxing power, the burden then shifts to the taxpayer to prove the existence of an applicable exemption from the tax. *Id.*

¶8. MDOR asserts that it has authority under Section 27-67-5 to impose use tax for freight charges that Tennessee Gas paid to an independent third party to ship tangible goods purchased for use in Mississippi. Section 27-67-5 states, in pertinent part:

> There is hereby levied, assessed and shall be collected from every person a tax for the privilege of using, storing or consuming, within this state, any tangible personal property or specified digital product possession of which is acquired in any manner.

> (a) The use tax hereby imposed and levied shall be collected at the same rates as imposed under Section 27-65-20, and Sections 27-65-17, 27-65-18, 27-65-19, 27-65-24, 27-65-25 and 27-65-26 computed on the purchase or sales price, or value, as defined in this article.

Miss. Code Ann. § 27-67-5 (Rev. 2024).

¶9. Both parties agree that the use tax laws should be read in conjunction with Mississippi's sales tax laws. Section 27-67-5(a) specifically notes that any use tax shall be collected using the same rates as codified under Mississippi's sales tax laws. The BTA and the chancellor, likewise, agreed that the use tax statutes and the sales tax statutes must be applied in harmony. The application of this harmonious reading, however, is where the two arguments diverge.

¶10. MDOR argues that the plain language of Sections 27-67-3 and -5 places no limitation on its power to impose use taxes upon freight charges. But we disagree. As the chancellor correctly noted, this Court applies the plain language of a statute only when the statute

4

contains clear and unambiguous language.  ***Buffington v. Miss. State Tax Comm'n***, 43 So. 3d 450, 454 (Miss. 2010).  When statutory language contains ambiguity, we explained:

> [We] will not engage in statutory interpretation if a statute is plain and unambiguous.  However, statutory interpretation is appropriate if a statute is ambiguous or is silent on a specific issue. In either case, the ultimate goal of this Court is to discern the legislative intent. The best evidence of legislative intent is the text of the statute; the Court may also look to the statute's historical background, purpose, and objectives. If a statute is ambiguous, it is this Court's duty to carefully review statutory language and apply its most reasonable interpretation and meaning to the facts of a particular case.

***Id.***  (alteration in original) (footnote omitted) (quoting ***Miss. Methodist Hosp. & Rehab. Ctr. v. Miss. Div. of Medicaid***, 21 So. 3d 600, 607-608 (Miss. 2009), *overruled on other grounds by* ***King v. Miss. Mil. Dep't***, 245 So. 3d 404, 406 (Miss. 2018)).

¶11.    Additionally, Mississippi Code Section 27-67-3(f) (Rev. 2024) defines *purchase price* or *sales price* as "the total amount for which [the] tangible personal property . . . is purchased or sold . . . including installation and service charges, and freight charges to the point of use within this state . . . ."  More specifically, *sale* or *purchase* is defined by subsection (e) as follows:

> "Sale" or "purchase" means the exchange of properties for money or other consideration, and the barter of properties or products. Every closed transaction by which title to, or possession of, tangible personal property or specified digital products passes shall constitute a taxable event. A transaction whereby the possession of property or products is transferred by the seller retains title as security for payment of the selling prices shall be deemed a sale.

Miss. Code Ann. § 27-67-3(e) (Rev. 2024).  The fact that Sections 27-67-3 and -5 do not expressly prohibit MDOR from imposing use tax on third-party transactions does not support MDOR's argument; rather it directly illustrates the ambiguity of the statute.

¶12.    Also, in its final judgment, the chancellor noted the similarities between the use-tax definition of *sale* or *purchase* stated above and the definitions of *sale* or *sales* and *gross proceeds of sales* established in our sales tax statutes.  For example, Mississippi Code Section 27-65-3(f) addresses the idea of separate, closed transactions:

> "Sale" or "Sales" includes the barter or exchange of property as well as the sale thereof for money or other consideration, and *every closed transaction by which the title to taxable property passes shall constitute a taxable event.*

Miss. Code Ann. § 27-65-3(f) (Rev. 2024) (emphasis added).  As stated above, Section 27-67-3(e) contains the same language regarding closed transactions.  Tennessee Gas highlights the closed-transaction mandates of both statutes as the linchpin of the chancellor's conclusion that the company's purchase of the tangible goods from the seller constituted one closed transaction, while its later purchase of third-party shipping services to move those goods from one location to another constituted a second closed transaction.  We agree.

¶13.    It is clear that the Legislature intended Mississippi's use-tax laws to be read in conjunction with the state's sales-tax laws.  In doing so, this Court previously held that "the sales-tax statute imposes a tax on the gross proceeds of sales on tangible personal property sold in the ordinary course of the seller's business."  *Castigliola*, 162 So. 3d at 800 (citing Miss. Code Ann. § 27-65-17(1) (Supp. 2014)).  This Court held that "[i]t is therefore clear that isolated or occasional sales by persons not in the business of selling the personal property at issue fall outside the authority of Section 27-65-17(1)."  *Id.*

¶14. This Court also went on to state that "sales tax does not apply to casual sales because they are not conducted within [a seller's] ordinary course of business." *Id.* (citing *Harry D. Kantor & Son v. Stone*, 203 Miss. 260, 34 So. 2d 492, 494 (Miss. 1948)). We explained:

> Isolated or occasional sales, except sales of motor vehicles, made by persons not regularly engaged in business *are not subject to* sales tax. No sale . . . *is taxable* under the Sales Tax Law if it is not made in the regular course of the business of a person selling tangible personal property.

*Id.* Finally, we concluded that "use tax is inapplicable to out-of-state casual sales." *Id.* (citing 35 Miss. Admin. Code Pt. 4, R. 3.02(101)). And the purchase of services in addition to or to facilitate the purchase of tangible goods, alone, does not transform the casual sale of the services into the sale of the tangible goods. *Id.* (holding that the purchase of a boat using the services of a broker does not absorb the broker's services into the transaction of purchasing the boat to make both transactions taxable).

¶15. This same logic can be applied here. The record reflects that Tennessee Gas purchased the tangible goods from the seller. Had the seller participated in both the sale of the goods and the shipping of the goods into Mississippi, the freight charges would likely be part of the use tax calculation under Section 27-67-5. But, as in *Castigliola*, Tennessee Gas's separate, isolated—or closed—purchase of shipping services from an independent third party, and not from the seller, renders the freight charges not subject to use tax.

## CONCLUSION

¶16. The chancery court held that because Tennessee Gas hired a third-party carrier for the shipment of the goods in a closed transaction, the freight charges should not be included in the taxpayer's use-tax base under Sections 27-67-3 and -5. We agree. Because we find this

7

issue to be dispositive, we will not address MDOR's remaining issue regarding the chancellor's deference to an agency's publication under Section 27-77-5.

¶17. **AFFIRMED.**

**KING AND COLEMAN, P.JJ., MAXWELL, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. SULLIVAN, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY ISHEE, J. RANDOLPH, C.J., NOT PARTICIPATING.**

**SULLIVAN, JUSTICE, SPECIALLY CONCURRING:**

¶18. The issue before this Court is whether the Mississippi Department of Revenue (MDOR) "met its burden of proving that it has the power to impose taxes for freight charges paid to third-party carriers, rather than to the seller of the purchased goods." Maj. Op. ¶ 7. In past cases, this Court has determined that we must first find that MDOR established its burden to tax a particular transaction. *See Castigliola v. Miss. Dep't of Revenue*, 162 So. 3d 795, 803 (Miss. 2015); *see also Fishbelt Feeds, Inc. v. Miss. Dep't of Revenue*, 158 So. 3d 984, 988-92 (Miss. 2014); *Stone v. Rogers*, 186 Miss. 53, 189 So. 810, 812 (1939). If "MDOR establishes that a transaction is subject to taxation, it is the taxpayer's burden to prove some statute or regulation would exempt the taxpayer from the tax." *Castigliola*, 162 So. 3d at 799 (citing *Miss. State Tax Comm'n v. Med. Devices, Inc.*, 624 So. 2d 987, 990-91 (Miss. 1993)). I would find that MDOR failed to provide such proof. *See id.* at 805; *see also La. Dep't of Revenue v. Apeck Constr., Inc.*, 238 So. 3d 1045, 1054 (La. Ct. App. 2018) ("To reiterate, the burden to prove that a taxpayer owes tax is on the Department. LDR has provided no such proof." (citing *Bridges v. Geoffrey, Inc.*, 984 So. 2d 115, 115 (La. Ct. App. 2008))).

¶19.   The majority's analysis relies on *Castigliola*. In that case, the sale at issue was the purchase of a boat, which was deemed to be a casual, non-business sale. *Castigliola*, 162 So. 3d at 800-01. Thus, the sale was not subject to the tax per the statute.[1] *Id.* at 801.

¶20.   Although *Castigliola* concerned a casual, non-business sale and the application of the casual-sale exemption, the Court ultimately held that MDOR failed to meet its burden of establishing its taxing authority. *Id.* at 805. MDOR argued that the sale was taxable because using a broker meant the sale was conducted in the ordinary course of the buyer's business and that "brokered sales [met] the definition of a sale in [Mississippi Code] Section 27-65-3(f)." *Id.* at 802. The Court determined that "[s]imply showing that a transaction is a taxable event is insufficient to prove the transaction is subject to a particular tax." *Id.* at 803. We held that MDOR did not cite any authority "for the proposition that the involvement of a third party in a casual sale makes the sale taxable." *Id.* Instead, this Court recognized that other "courts that have considered this argument have concluded the opposite—the involvement of a third party, without an express designation of law stating otherwise, is deemed not to affect the status of a casual sale." *Id.*

¶21.   In the instant case, MDOR's arguments are similar to those made in *Castigliola* as it again relies on statutory definitions and administrative regulations. Neither, however, address the taxability of freight charges made by and paid to a third party carrier. Mississippi's Administrative Code provides that

---

[1]The sales at issue here were conducted as part of Tennessee Gas's ordinary course of business. Thus, these sales are distinguishable from the non-business, casual sale made in *Castigoliola*. *See id.* at 800-01.

[i]ncome received from . . . delivery charges must be included in gross proceeds of sales or gross income when incurred in connection with the sale of tangible personal property or in the performance of taxable services by vendors doing business within this State. This includes any *charges made by the seller* for delivery of property sold to the purchaser even though such amounts are separately stated on the seller's invoice apart from the sales price of the property.

35 Miss. Admin. Code Pt. IV, R. 2.03(100), Westlaw (current through Feb. 2025) (emphasis added). This administrative regulation discusses inclusion of delivery fees made by the seller, not a third party carrier. The use tax statute is computed on the purchase or sales price, or value. Miss. Code Ann. § 27-67-5(a) (Rev. 2024). It is true that the definition of purchase or sales price includes the phrase "including installation and service charges, and freight charges to the point of use within this state[.]" Miss. Code Ann. § 27-67-3(f) (Rev. 2024). But the statute does not define or explain whether freight charges are to include charges by the seller of goods or include those asserted by third party carriers. Looking to the sales tax statute for guidance, it defines *delivery charges* as "any expenses incurred *by a seller* in acquiring merchandise for sale in the regular course of business commonly known as 'freight-in' or 'transportation costs-in.'" Miss. Code Ann. § 27-65-3(g) (Rev. 2024) (emphasis added). Additionally, this includes "any charges made *by the seller* for delivery of property sold to the purchaser." *Id.* (emphasis added). Unlike the use tax statute, the sales tax statute states explicitly that it includes the transportation or delivery costs made by the seller to the buyer. It does not mention third party deliveries.

¶22. MDOR's argument that the plain language of the sales and use tax statutes do not limit its power to impose use taxes in this situation is arbitrary and capricious.[2] "Administrative agencies have only those powers expressly granted, or necessarily implied, within the four corners of the statute under which the agency operates." *Id.* at 889 (citing ***Dean v. Pub. Emps.' Ret. Sys.***, 797 So. 2d 830, 834 (Miss. 2000)). As mentioned above, this taxing power is not expressly granted by either the sales tax statute or the use tax statute. Additionally, we have determined that this "power cannot be implied" and that "[a]ll doubts must be resolved in favor of the taxpayer." ***Castigliola***, 162 So. 3d at 799 (alteration in original) (internal quotation marks omitted) (quoting ***Stone***, 189 So. at 812).

¶23. Looking at the plain language of the sales tax and use tax statutes, no statutory authority plainly permits MDOR to tax the freight charges Tennessee Gas paid to independent third party carriers.[3] Therefore, the chancellor's decision to grant summary

---

[2]This Court has said:

> An administrative body makes an arbitrary and capricious decision when an agency makes a decision unsupported by evidence. ***Davis v. Public Employees' Ret. Sys.***, 750 So. 2d 1225, 1230 (Miss. 1999). An administrative act is "arbitrary" when it is not done according to reason or judgment, but depending on the will alone. ***Burks v. Amite County Sch. Dist.***, 708 So. 2d 1366, 1370 (Miss. 1998). An administrative act is capricious when done without reason, in a whimsical manner, implying either lack of understanding or a disregard for the surrounding facts and settled controlling principles. ***Id.***

***Bay St. Louis Cmty. Ass'n v. Comm'n on Marine Res.***, 808 So. 2d 885, 890 (Miss. 2001).

[3]Tennessee Gas and the majority determine that the "linchpin" to concluding the freight charges are not taxable is because each transaction constituted one closed transaction. Maj. Op. ¶ 12. But I am not convinced that this distinction is the *linchpin* to deciding these types of cases. Some states have stated explicitly that freight or delivery charges that are paid directly to third party carriers are not taxable. *See* Fla. Admin. Code Ann. R. 12A-1.045,

11

judgment should be affirmed because MDOR failed to meet its burden of establishing that third party freight charges paid by Tennessee Gas fall within MDOR's statutory taxing power.

**ISHEE, J., JOINS THIS OPINION.**

---

Westlaw (current through Mar. 2025); 67B Am. Jur. 2d *Sales and Use Taxes* § 171, Westlaw (database updated Jan. 2025); see also ***Union Elec. Co. v. Dep't of Revenue***, 556 N.E.2d 236, 239 (Ill. 1990). While other states have determined that "[w]hether any sales or use tax is owed for freight charges depends on who has title to the goods at the time of delivery." ***Cladding Tech., Inc. v. North Dakota ex rel. Clayburgh***, 562 N.W.2d 98, 102 (N.D. 1997). *See also* ***S. Red-E-Mix Co. v. Dir. of Revenue***, 894 S.W.2d 164, 166 (Mo. 1995); ***Rich's, Inc. v. Blackmon***, 211 S.E.2d 916 (Ga. Ct. App. 1975); 67B Am. Jur. 2d *Sales and Use Taxes* § 129, Westlaw (database updated Jan. 2025); 67B Am. Jur. 2d *Sales and Use Taxes* § 204, Westlaw (database updated Jan. 2025).