DIANE SHERMAN vs. COMMISSIONER OF REVENUE.

Suffolk. December 10, 1986. — April 14, 1987.

Present: GRANT, BROWN, & KASS, JJ.

*Taxation*, Sales and use tax, Appellate Tax Board: jurisdiction. *Jurisdiction*, Appellate Tax Board. *Sale*, What constitutes.

A person in the business of managing garage and yard sales in which goods are sold on the owner's premises and remain under the owner's control until sold was not a "vendor" for purposes of G. L. c. 64H, § 2, and thus was not liable for the collection and return to the Commonwealth of sales tax on the goods sold. [66-68]

Where a person was not liable to taxation, the filing of a tax return was not a prerequisite under G. L. c. 62C, § 38, to her receiving from the Appellate Tax Board an abatement of assessed tax. [68]

APPEAL from a decision of the Appellate Tax Board.

*Robert J. McGee* for the taxpayer.

*Douglas H. Wilkins,* Assistant Attorney General, for the Commissioner of Revenue.

KASS, J. Roughly in harmony with the life cycle of lawn grass, garage and yard sales erupt on the New England landscape. They are a contemporary phenomenon. A modest service business has developed in aid of these sales. Such is the occupation of the appellant taxpayer, Diane Sherman. She manages garage and yard sales for householders who are casting their surplus baggage into the stream of commerce.

At issue is whether Sherman is liable to collect and return to the Commonwealth sales tax on goods sold at the garage and yard sales she runs. The Commissioner of Revenue has assessed a tax of $24,887.77, interest and penalties included, for periods from January 1, 1978, through March 31, 1982. Leaving aside, for the moment, tax periods as to which the Appellate Tax Board (board) declined jurisdiction, the board determined that Sherman was liable for the tax assessed. She

has appealed from the board's decision. See G. L. c. 211A, § 10, as amended by St. 1985, c. 314, § 4. To resolve whether sales tax is owing we must determine whether Sherman is *selling* the goods, within the meaning of the statute, or whether she is only a handmaiden — or, to use a more contemporary word, a facilitator — to the true sellers of the goods.

An excise (the sales tax) falls upon "sales at retail of tangible personal property . . . by any vendor . . . except as otherwise provided . . . ." G. L. c. 64H, § 2, as appearing in St. 1967, c. 757, § 1. Exemptions from the sales tax appear in G. L. c. 64H, § 6, as amended by St. 1970, c. 566, § 7, and include paragraph (*c*), "[c]asual and isolated sales by a vendor who is not regularly engaged in the business of making sales at retail," although exemption does not extend to casual or isolated sales of a motor vehicle, boat or airplane. It is not disputed by the parties that sales by the property owner who sets up tables in a front yard to dispose of unwanted sofas, clothes, dishes, steamer trunks, Flexible-Flyers, hockey skates, Mickey Mouse lamps, 45 rpm record players, and other doodads fall into the exemption. See 830 Code Mass. Regs. § 16.01(1)(a) (1979). Does the intervention of a facilitator alter the enterprise and the tax consequences?

We summarize the facts found by the board. There is agreement that those facts have support in substantial evidence. See *Pequot Assocs.* v. *Assessors of Salem,* 376 Mass. 270, 274-277 (1978); *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. 456, 465-467 (1981).

Sherman's customers are generally house owners moving into smaller residences who find it necessary to jettison furniture and furnishings. Before a sale, Sherman and a part-time crew she hires move items to be sold from the reaches of the house — attic, basement, bedrooms — to a collecting point on the premises of the owner for display. She establishes prices at which the items are to be offered for sale,[1] cleans them, and

---

[1] Although her usual written contract reserved to her the right and duty to price sale items, Sherman testified that, as a practical matter, the owners had the last word on prices because owners could withdraw items from sale if Sherman did not acquiesce in their view of the value of particular items.

tags them with their prices. As part of her service, Sherman advertises a forthcoming sale in local newspapers and by mailing notice to persons who might be interested. The sales usually occur over a Friday and Saturday, with Sherman in attendance. If a customer offers less than the tag price, Sherman has discretion to come down a prearranged percentage. Sherman may not accept an offer below that margin without consent of the owner. Unsold merchandise remains the property of the owners; risk of loss by damage or theft is entirely that of the owners.

Sherman remits the originals of all sales slips to the owner, together with the net proceeds less her commission, which varies from twenty to thirty percent of the gross. After a sale, Sherman and her crew clean up and box, or otherwise store, the unsold goods for the owner. Sherman manages some fifteen to twenty-five sales of this sort per year. She has not conducted sales more than once for any person.

1. *Taxpayer's liability.* If the vendor in the prototypical transaction which Sherman manages is the owner of the goods, it follows that the casual or isolated sale exemption of G. L. c. 64H, § 6(*c*), applies because § 6(*c*) confers the exemption upon a "vendor who is not regularly engaged in the business of making sales at retail." A "vendor," by statutory definition, is "a retailer or other person selling tangible personal property of a kind" subject to sales tax. G. L. c. 64H, § 1(18), inserted by St. 1967, c. 757, § 1. That definition has a circular quality but serves to focus the inquiry on who, in the prototypical transaction, is doing the selling. The board purported to "find" that the taxpayer, Sherman, was the seller of the property but that determination is one of law and open to judicial review. See *Needham* v. *Winslow Nurseries, Inc.,* 330 Mass. 95, 99 (1953); *Comptroller of Treasury* v. *Thomson Trailer Corp.,* 209 Md. 490, 500 (1955).

In a case arising under the Uniform Commercial Code, namely G. L. c. 106, § 2-103(1)(*d*), the absence of title or possession was thought decisive in determining that the defendant was not a "seller" of the personal property in question. *Hitchcock* v. *Emergency Lighting & Sys., Inc.,* 12 Mass. App. Ct. 930 (1981). Sherman, in the instant case, never had title.

Although the board, without analysis, came to a contrary conclusion, one is hard put to say she ever had possession of the sale items. She assembled, cleaned, displayed, and tagged them, but the goods, until sold, never left the owner's premises, never left the owner's control (at any time the owner could withdraw an item from the sale), and Sherman specifically disclaimed responsibility "for any losses of merchandise, due to theft, fire, breakage, or any other reason." Other considerations in identifying a seller are who receives the compensation and who is responsible for the quality of the goods. See *Staco Energy Prod. Co.* v. *Driver-Harris Co.,* 578 F. Supp. 700, 703 (S.D. Ohio 1983), and cases cited. Here the money, less Sherman's commission or service charge, flowed to the owner of the goods and the record does not suggest that Sherman assumed any responsibility for the quality or genuineness of goods sold.

We conclude that Sherman, in the prototypical transaction described by the board, is not a vendor within the meaning of the statute and, therefore, is not liable for the sales tax. Rather, she is performing personal services in aid of the property owner making a casual or isolated sale, i.e., one "of an infrequent, non-recurring nature made by a person not engaged in the business of selling tangible personal property." 830 Code Mass. Regs. § 16.01 (1979). The case is much like *Harrison Conference Servs. of Mass., Inc.* v. *Commissioner of Rev.,* 394 Mass. 21, 24 (1985), in which the personal services of a food preparer did not alter the tax exempt status of meals served by an employer to its employees at its training center. For cases in which other jurisdictions (under varying statutory texts) have concluded that service intermediaries do not alter the nature of an otherwise tax exempt casual sale see: *Doolittle* v. *Johnson,* 250 A.2d 822, 824 (Me. 1969) (boat broker); *State* v. *Tysdal,* 303 Minn. 233 (1975) (auctioneer). Contrast *Oberlander* v. *Porterfield,* 28 Ohio St. 2d 171 (1971) (auctioneer). In Massachusetts an auctioneer is expressly designated a "retailer" by statute for sales tax purposes. G. L. c. 64H, § 1(9)(*b*) & (*c*). See also 830 Code Mass. Regs. § 16.01(2)(a) (1979). The imposition by the statute of retailer status upon auctioneers

(who frequently assemble on their own premises goods entrusted to them for sale) and the silence of the statute concerning a facilitator like Sherman buttress our view that her services do not alter the tax nature of the underlying transactions.[2] Doubts in taxing statutes are resolved in favor of the taxpayer; the right to tax is not extended by implication. *Dennis* v. *Commissioner of Corps. & Taxn.,* 340 Mass. 629, 631 (1960). *Boston Safe Dep. & Trust Co.* v. *State Tax Commn.,* 346 Mass. 100, 105 (1963). *DiStefano* v. *Commissioner of Rev.,* 394 Mass. 315, 325-326 (1985).

2. *Jurisdictional question.* For the tax periods from July 1, 1981, to March 31, 1982,[3] Sherman filed sales tax returns, having been placed on notice by the Commissioner that he was asserting a sales tax liability against her. As to those periods the Board denied Sherman's application for abatement under G. L. c. 62C, § 37. As to the sales tax periods from January 1, 1978, through June 30, 1981, for which Sherman filed no returns, the Board declined jurisdiction on the ground that under G. L. c. 62C, § 38, a tax return is a prerequisite to an application for abatement. Section 38 provides that "[n]o tax assessed on any person *liable to taxation* shall be abated unless the person assessed shall have filed, at or before the time of bringing his application for abatement, a return as required by this chapter for the period to which his application relates. . . . " G. L. c. 62C, § 38, as appearing in St. 1976, c. 415, § 22 (emphasis supplied). If, however, Sherman was not *liable to taxation,* i.e., if "no tax was due at all, a return need not be filed as a condition precedent to receiving an abatement." *Commissioner of Rev.* v. *Fashion Affiliates, Inc.,* 387 Mass. 543, 548 (1982). Compare *Commissioner of Rev.* v. *Pat's Super Mkt.,* 387 Mass. 309, 310-311 (1982).

---

[2] Sales by intermediaries, such as executors, administrators, trustees, receivers, and other kinds of fiduciaries are, by regulation, regarded as exempt from taxation. 830 Code Mass. Regs. § 16.01(1)(b) (1979).

[3] As to the filing of sales tax returns, see G. L. c. 62C, § 16(*h*), and 830 Code Mass. Regs. § 62C.14(3) (1981). The regulation provides for quarterly returns.

The decision of the board is reversed. The board shall enter an order that the tax assessed, together with penalties and interest, $24,887.77, which the taxpayer has paid, shall be abated in full, together with statutory interest.

*So ordered.*