# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-01390-SCT

*PURSUE ENERGY CORPORATION*

*v.*

*MISSISSIPPI STATE TAX COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/27/2006 |
| TRIAL JUDGE: | HON. THOMAS L. ZEBERT |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JAMES T. KNIGHT |
| | C. GLEN BUSH |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: WILLIAM F. BLAIR |
| | TROY FARRELL ODOM |
| | GEOFFREY C. MORGAN |
| | GARY WOOD STRINGER |
| NATURE OF THE CASE: | CIVIL - BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 09/20/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DIAZ, P.J., CARLSON AND RANDOLPH, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    The Rankin County Chancery Court, Chancellor Thomas L. Zebert presiding, granted summary judgment in favor of the Mississippi State Tax Commission (MSTC) and against Pursue Energy Corporation, holding that Pursue owed the State of Mississippi a use tax for gas it used and consumed in its operations. From this grant of summary judgment, Pursue appealed to this Court. Finding no error, we affirm.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     The facts were very ably set out by the chancellor in his Findings of Fact and

Conclusions of Law:

> Pursue operates a number of sour gas wells in the Thomasville Field, located
> in Rankin and Simpson Counties, Mississippi.  The gas requires processing to
> remove hydrogen sulfide ("sour gas") before it can be sold.  Pursue owns the
> gas wells, the pipelines, and the plant at which the hydrogen sulfide is
> removed.  Pursue processes the sour gas to remove the hydrogen sulfide.  From
> the clean gas available at the tailgate of the plant ("Residue Gas"), most of the
> processes [sic] gas is sold; however, Pursue uses a portion of the processed gas
> for plant fuel ("Plant Fuel") and as fuel to run its lease equipment at the well
> sites, ("Lease Fuel").
>
> Pursue first began operations in the Thomasville Field in the late 1970's.
> Initially, Pursue purchased Plant Fuel and Lease Fuel from Shell Oil Company
> ("Shell").  Shell paid sales tax to the State of Mississippi on the gas Shell sold
> Pursue.
>
> In 1995, Pursue purchased the Shell wells and plant ("Shell Plant").
> Thereafter, Pursue began using its own processed gas for Plant Fuel and Lease
> Fuel.  However, Pursue does not pay use tax to the State of Mississippi on the
> use of the processed gas, even though it is believed to be required to under
> state law.
>
> Pursue removes certain volumes of processed gas at the tailgate of the Shell
> Plant for its plant and lease fuel operations.  For income tax, plant processing
> charges, royalty owner payment purposes, and severance tax deductions,
> Pursue values this volume based upon the average price per MCF Pursue
> receives for the Residue Gas it sells to third parties at the plant tailgate.  Pursue
> pays royalties on the Residue Gas used for Plant Fuel and Lease Fuel to its
> royalty owners and books it as income to the company.  Pursue then deducts
> that same value as an expense to the plant, and charges its royalty owners the
> same amount as part of its processing fee.  Pursue also deducts that value from
> its severance taxes as an expense to the owners to process the gas as if it were
> purchasing the gas from a third party.
>
> In 2001, the Commission audited Pursue to determine use tax liability for the
> gas used by Pursue.  The Court reviewed the March 15, 2001, Summary of tax

2

[sic] Audit, attached to Memorandum Brief in support of Motion for Summary Judgment as Exhibit "A". This audit covered the period of time from October 1, 1997, through September 30, 2000. Pursuant to the audit, the Commission determined that Pursue owed $354,674.00 in use taxes, penalties and interest.

On or about March 15, 2001, the Commission issued as (sic) assessment against Pursue for $312,988.00.[1] Copy of Assessment was attached to Memorandum Brief in support of Motion for Summary Judgment and marked Exhibit "B".

On March 23, 2001, Pursue appealed the assessment to the Commission's Board of Review. On August 28, 2001, the Board of Review upheld the use tax assessment. The Order of the Board of Review was attached to Memorandum Brief in support of Summary Judgment marked as Exhibit "C".

On September 5, 2001, Pursue appealed the Board of Review's decision to the full Commission. On February 13, 2002, the Commission issued its Order, upholding the original assessment. See Order of the Commission, attached to Memorandum Brief in support of Motion for Summary Judgment marked as Exhibit "D". The Commission held:

> [w]ithdrawal of such gas would give rise to sales proceeds under Miss. Code Ann. § 27-65-3(h)[2] and would subject such activity to Mississippi Sales Tax under Miss. Code Ann. § 27-65-19. The subsequent use of said natural gas by the taxpayer gives rise to a use tax at the same tax rates as set out under Miss. Code Ann. § 27-65-19 for the sale of such natural gas since the

---

[1]From the audit determination that Pursue owed $354,674.00, Pursue paid $41,686.00, which reduced the assessment to $312,988.00.

[2]Miss. Code Ann. § 27-65-3(h) states in pertinent part:
> "Gross proceeds of sales" shall include the value of any goods, wares, merchandise or property purchased at wholesale or manufactured, and any mineral or natural resources produced which are excluded from the tax levied by Section 27-65-15, which are withdrawn or used from an established business or from the stock in trade for consumption or any other use in the business or by the owner.

3

> withdrawal of such gas has not been included in the measure of
> a Mississippi Sales tax under Miss. Code Ann. § 27-65-19 .

> The Commission assessed $353,203.00 for taxes, penalties, and interest. Pursue subsequently paid the full amount of the assessment. However, rather than appeal the full Commission's ruling to the Chancery court [sic] of Rankin County, Mississippi, Pursue filed for Chapter 11 bankruptcy protection on September 20, 2002. Because the assessment was fully adjudicated by the Commission, and the delinquent amount paid in full, the Bankruptcy Court was without jurisdiction to determine any further appeal by Pursue.[3] Finally, on September 14, 2004, Pursue filed its appeal in this Court.[4]

¶3.     On February 23, 2006, the Commission filed a Motion for Summary Judgment, including a Memorandum in Support of Motion for Summary Judgment. The Memorandum included the partial deposition of Jeff Brasher (Brasher), Pursue's Revenue Accounting Manager. On April 5, 2006, the Commission filed a Motion to Compel. Pursue then filed its own Motion for Summary Judgment on May 12, 2006.

¶4.     On May 15, 2006, the chancellor conducted a hearing on the Commission's Motion for Summary Judgment.[5] On May 16, 2006, the Commission filed a Motion to Supplement the Record for its Motion for Summary Judgment. On June 14, 2006, the chancellor entered

---

[3]The Bankruptcy Court has since determined that Pursue failed to pay other taxes it owed on its operations by Opinion dated February 3, 2006.

[4]On September 14, 2004, Pursue filed its complaint in the Rankin County Chancery Court, which served as an appeal from the decision of the Commission, asking for a refund of the use taxes it paid pursuant to Miss. Code Ann. § 27-67-27, which was repealed by Laws, 2005, ch. 499, § 36 effective from and after July 1, 2005.

[5]Because notice of ten days is required for a Motion for Summary Judgment, the Chancellor heard only the Commission's Motion for Summary Judgment because Pursue's Motion for Summary Judgment was filed three days before the hearing.

4

an Order Granting Motion to Supplement Record and allowed the Commission to supplement

Brasher's entire deposition rather than his partial deposition. Also, the chancellor entered

his Findings of Fact and Conclusions of Law for Summary Judgment on June 14, 2006,

concluding:

> The Mississippi Use Tax Law to this Court is clear and unambiguous. All personal property used or consumed within the state is taxable if sales tax has not already been collected. Natural gas is such a personal property. There is no requirement for a "sale" within the traditional definition of an exchange of property for monetary consideration.

> It is the opinion of this Court and the Court finds that the Mississippi State Tax Commission's Motion for Summary Judgment is granted and the decisions of the Board of Review and the full State Tax Commission is upheld.

> This Court is further of the opinion that statutory interest rate of 1% as provided by the (sic) Mississippi Code Ann. § 27-65-39[6] is granted.

¶5. The chancellor entered final judgment on July 27, 2006, denying Pursue's request

for a refund of use taxes paid, stating:

> The parties, including the appellant, Pursue Energy Corporation, provided to this Court a Pretrial Order in Bankruptcy Court styled *In re: Pursue Energy*, Bankruptcy No. 02-05339-JEE-11, wherein the Bankruptcy Court referred the use tax issues to this Court for consideration. Furthermore, that Pretrial Order

---

[6]Miss. Code Ann. § 27-65-39 states in pertinent part:

> If any part of the deficient or delinquent tax is due to intentional disregard of the provisions of this chapter or authorized rules and regulations promulgated under the provisions of this chapter, or to fraud with intent to evade the law and in such case the whole amount of tax unpaid, including the charges so added, shall become due and payable upon notice and demand by the commissioner, and interest of one percent per month of the tax shall be added from the date such tax was due until paid.

specifically recited that any decision of this Court could be used by the Bankruptcy Court for determination of any use taxes that were applicable after September 30, 2000. This Final Judgment hereby determines that the State Tax Commission's use tax assessments are valid and that use taxes are due and collectible on any gas used by Pursue Energy for fuel for its plant and for lease operations. Any calculations of the actual use taxes, penalties, and interest owed from and after October 1, 2000, until the date of the Confirmation Order, shall be presented to the Bankruptcy Court for its determination. This Court likewise rules that the State Tax Commission's assessment of interest and penalties was proper.

¶6.     Pursue then timely appealed to this Court. On August 30, 2006, this Court entered an order at the request of the Commission granting expedited status to the case sub judice.[7]

**DISCUSSION**

¶7.     "We employ a de novo standard of review of a trial court's grant or denial of summary judgment and, examine all the evidentiary matters before it, [such as] admissions in pleadings, answers to interrogatories, depositions, affidavits, etc." ***Gregory v. Cent. Sec. Life Ins. Co.***, 953 So. 2d 233, 238 (Miss. 2007) (quoting ***Hurdle v. Holloway***, 848 So. 2d 183, 185 (Miss. 2003)). "Furthermore, '[t]he evidence must be viewed in the light most favorable

---

[7]Even though this Court expedited this appeal, there were several delays, as revealed by the Clerk's Docket. The trial court record was not filed until November, 17, 2006, and on the same day, the Clerk of this Court issued a briefing schedule notice. Pursue's counsel requested and received from the Clerk, on December 18, 2006, and January 22, 2007, additional time to file the appellant's brief. On February 14, 2007, Pursue's counsel received additional time to file its brief by way of a single-justice order. Once Pursue filed its brief on February 26, 2007, the MSTC filed its brief fourteen days later on March 12, 2007. Pursue's counsel thereafter filed a motion for additional time to file its reply brief, and was given additional time by a single-justice order entered on March 29, 2007. On the extended due date, April 25, 2007, Pursue filed its reply brief. The MSTC filed a motion for permission to file a surreply brief, which was denied by a single-justice order entered on May 22, 2007.

6

to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in his favor. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party.'" *Id.* (quoting *Moore ex rel. Moore v. Mem'l Hosp. of Gulfport*, 825 So. 2d 658, 663 (Miss. 2002)).

¶8.     There are three issues for this Court to decide: (1) whether the chancellor erred in holding that Pursue's use of its own gas for its operations is subject to the use tax; (2) whether the chancellor used the correct standard of review; and (3) whether the chancellor erred in determining that there were no outstanding issues of material fact.

### I.    WHETHER THE CHANCELLOR ERRED IN HOLDING THAT PURSUE'S USE OF ITS OWN GAS FOR ITS OPERATIONS IS SUBJECT TO THE USE TAX.

¶9.     The chancellor held in his Findings of Fact and Conclusions of Law that the Commission's decision was supported by substantial evidence, stating:

> Pursue does not dispute that it used the Residue Gas for Plant Fuel and Lease Fuel as part of its operations in the Thomasville Field. Further, Pursue does not dispute that Shell formerly paid sales tax on this same fuel when Pursue purchased the fuel from Shell. Pursue's sole argument is that the Plant Fuel and Lease Fuel was neither sold, nor placed in the market for sale and, therefore, there is no transaction upon which to impose the use tax. Pursue's argument disregards the plain language of the use tax statute, the elementary premise of use tax, and ignores its own treatment of the fuel in its accounting process.
>
> Mississippi Code Annotated § 27-67-1 *et seq*. is known as the Mississippi Use Tax Law. Section 27-67-5 provides:
>
> > There is hereby levied, assessed and shall be collected from every person a tax for the privilege of using, storing or

7

consuming, within this state, any tangible personal property possession of which is acquired in any manner.

The use tax is assessed and collected at the same rates as imposed under §27-65-19, and computed on the value of the property. *Id*. § 27-67-5(a). A sales tax is a tax on a purchase, whereas "the use tax of the State of Mississippi is . . . a tax upon the 'using, storing, or consuming' of tangible personal property within the State." *Mavar Shrimp & Oyster Co. v. Stone*, 73 So.2d 109, 111 (Miss. 1954).

The use tax rate is set by Miss. Code Ann. § 27-65-19. The rate is 7% sales tax on the value of the natural gas, liquified petroleum gas or other fuel sold for non-industrial purposes, i.e., Lease Fuel, *Id*. § 27-65-19(1)(a), and 1.5% of the value of the natural gas, liquified petroleum gas or other fuel sold for industrial purposes, i.e., Plant Fuel.

Essentially, it appears that Mississippi's use tax is simply a statutory tax on the use of personal property in situations where there is no purchase from a third party that would generate a sales tax. That "use", for all practical purposes, is taxed just like the "sale" it replaces. The only necessary requirement is a use or consumption of personal property in this State computed at the value of the object.

Leading authorities on the subject of state taxation describe use taxes as follows:

> When a manufacturer uses property it produces in its own business, a number of states treat the use as taxable, as if the manufacturer had purchased the property for its own use. Failure to treat such uses as taxable provides an economic advantage to those who produce their own property over those who must purchase such property from third parties.

*Jerome R. Hellerstein & Walter Hellerstein, State and Local Taxation ¶ 16.07 (3d ed. 2005).*

¶10. At the January 23, 2002, hearing, the full State Tax Commission found:

> 1. The use tax assessment arose following Pursue's use of refined, processed gas for its plant and lease operations.

8

2. Prior to the audit, Pursue purchased the fuel from third parties and paid sales tax on those purchases.

3. Pursue's withdrawal of the gas gives rise to Mississippi sales tax under Miss. Code Ann. § 27-65-3.

4. Pursue's use of the processed gas for fuel gives rise to use tax at the same rates as contained in Mississippi sales tax law only to the extent sales tax was not paid on the plant and lease fuel.

. . .

Pursuant to Mississippi law, that portion of the processed gas used to fuel plant operations is subject to use tax at a rate of 1.5%. Miss. Code Ann. § 27-65-19(1)(b). That portion of the processed gas used to fuel lease operations is subject to use tax a [sic] rate of 7%. *Id.* § 27-65-19(1)(a). This is the precise manner in which the State Tax Commission assessed Pursue. This decision was upheld by the Commission's Board of Review and by a full hearing of the entire Commission.

No question exists that natural gas used as fuel is personal property subject to the use tax. In 1992, the Mississippi Supreme Court held that an interstate pipeline company was liable for Mississippi use tax on that portion of natural gas it removed from its pipeline stream to fuel its compressors located at equidistant intervals on the pipeline. ***Tennessee Gas Pipeline Co. v. Marx***, 594 So. 2d 615 (Miss. 1992). The State Tax Commission assessed use tax on only that portion of natural gas used within Mississippi. The Mississippi Supreme Court upheld this assessment as a fundamental function of the Mississippi Use Tax Law.

***Tennessee Gas Pipeline*** demonstrates the uncomplicated role of use taxes within Mississippi's taxing program. Identical to this case, there was no third party "sale" (i.e., exchange of natural gas for monetary consideration) of the natural gas used by Tennessee Gas Pipeline Company ("Tennessee Gas"). If there had been a sale, Tennessee Gas would be liable for sales tax on the value of fuel used for the compressors. Instead of a sale, Tennessee Gas used the natural gas, thereby realizing a valuable benefit. Mississippi Code Section 27-67-5 clearly subjects that consumption to use tax ("which is acquired in any manner"). As a taxing authority, Mississippi taxes the value of the goods consumed.

As an accounting procedure, Pursue classifies the removal of the Plant and Lease Fuel as a sale to itself, valuing the fuel as the average selling price of

processed gas sold. Pursue subsequently pays the royalty owners their portion of the "proceeds" from the fuel sold. Pursue turns around and takes a deduction of the same amount as part of its processing fee. Pursue then charges the royalty owners their portion of the processing charge. In the end, treatment of the fuel use is a financial wash as far as Pursue is concerned. However, at no point dues [sic] Purdue pay to the State of Mississippi use tax on the portion of fuel used.

Pursue's own testimony tells the whole story. Jeff Brasher, Pursue's Revenue Accounting Manager, testified that Pursue treated the use of the Plant Fuel and Lease Fuel on its own books as a purchase.

> Q.    So it is a sale to yourself; isn't it?
> A.    It's a sale to our – it's a part, yes, to ourselves and every other royalty owner, that's correct.
> . . .

Mr. Brasher also testified to the relative ease in valuing the fuel gas and how it was treated for royalty owner purposes:

> Q.    So it (fuel gas) is deducted from the clean gas in a volume basis?
> A.    Yes.
> Q.    But if you multiplied it times the price it would also have a value; wouldn't it?
> A.    Yes.
> Q.    And you do – Pursue does multiply that times a value; doesn't it?
> A.    Yes, we do.
> Q.    I mean it's recorded on your income tax statement as an income and as an expense; isn't it? Doesn't it go on both columns? I'll show you that in a minute.
> A.    Okay.
> Q.    But you also value it for royalty purposes; don't you.
> A.    Yes, we do.
> Q.    Are you using the same value for MCF as you're selling it?
> A.    Selling what?
> Q.    The residue gas.
> A.    Oh, yes.

Q. So what you do is take your average sale price and you would – you would multiply the volume times that and pay the royalty on that basis, right?

A. Yes.

. . .

The Commission treated the fuel gas in the same manner as Pursue. It valued the gas on the same basis that the remaining Residue Gas was sold. That fuel consumed by Pursue is taxable under the Mississippi Use Tax Law.

¶11. Pursue first argues that there was never a sale; additionally, Pursue argues that it is a wholesaler pursuant to Miss. Code Ann. § 27-65-107(d) (Rev. 2005), which states that sales taxes shall not be levied on "[w]holesale sales of tangible personal property for resale under Section 27-65-19." Thus, Pursue argues that it is exempt from paying use tax on the gas pursuant to Miss. Code Ann. § 27-67-7(b), which states that use taxes shall not be collected on "[o]n the use, storage or consumption of tangible personal property to the extent that sales of similar property in Mississippi are either excluded or specifically exempt from sales tax or are taxed at the wholesale rate."

¶12. Pursue correctly states that it is a wholesaler, as Pursue sells most of its gas to other companies for resale. However, the gas used at the plant was never sold at wholesale for resale by another company. Instead, Pursue treated the transaction as a sale to itself and used the gas to fuel its own operations. Thus, Pursue cannot avail itself of the wholesaler exemption.

¶13. Pursue also argues that the use tax only applies to out-of-state purchases brought into Mississippi for use and directs us to a federal district court decision:

11

The sales tax is levied against the seller of tangible personal property whereas the use tax is levied against the purchaser or user of such tangible personal property.

Accordingly, the Mississippi Sales Tax can be classified as a tax upon the gross receipts of goods which are sold within the State of Mississippi. On the other hand, the Mississippi Use Tax can be classified as a tax imposed upon the purchaser of goods which are bought outside of the State of Mississippi but are brought into the State of Mississippi by the purchaser thereof to be used, stored or consumed within the State of Mississippi. It should be noted that the rates of both the sales and use taxes imposed by the State of Mississippi are identical. Consequently, it is clear that the intention is for the sales taxes and the use taxes to be complementary and that all tangible personal property, whether bought in the State of Mississippi or purchased outside of the State of Mississippi and brought into the state for use, storage or consumption, is to be subject to the same rate of tax.

*United States v. Mississippi*, 578 F. Supp. 348, 350-351 (D. Miss. 1984).

¶14.   Accordingly, Pursue also argues that *Tennessee Gas,* on which the chancellor relied extensively, is not controlling in the case *sub judice*.  In *Tennessee Gas*, the issue was whether use taxes were owed "upon the pipeline company's use of natural gas taken from its *interstate* gas pipeline as fuel for compressor engines located along the pipeline." *Tennessee Gas*, 594 So. 2d at 616 (emphasis added).  The pipeline company argued that the imposition of Mississippi's use tax was impermissible under the commerce and due process clauses of the United States Constitution.  *Id.*

¶15.   Pursue argues that in *Tennessee Gas*, this Court addressed only the interstate commerce issue.  We disagree, as this Court also stated that "[b]oth interstate and intrastate taxpayers, if positioned as this pipeline company is, are required to pay a use tax on fuel consumed in Mississippi."  *Id.* at 618.  Thus, we find *Tennessee Gas* to be directly on point,

12

as the companies are similarly situated in that both use their own fuel to power their plants. It is irrelevant whether Pursue's gas came from within Mississippi's borders or was brought into the state. We also find that *United States v. Mississippi* is inapplicable, as this Court is not bound by the federal district court's language, and *Tennessee Gas* was decided by this Court some eight years after the federal district court's decision in *United States v. Mississippi*. Accordingly, we find that the chancellor did not err in finding that Pursue owed the State of Mississippi a use tax; therefore, this issue is without merit.

## II.     WHETHER THE CHANCELLOR USED THE CORRECT STANDARD OF REVIEW.

¶16.    The chancellor stated in his Findings of Fact and Conclusions of Law:

> The state courts of Mississippi provide "great weight and deference" to the decisions of the State Tax Commission. *3300 Corp. v. Marx*, 633 So.2d 1028, 1031 (Miss. 1994); *State Tax Comm'n v. Edmondson*, 196 So.2d 873, 877 (Miss. 1967); *L.H. Conrad Furniture Co. v. Miss. State Tax Comm'n*, 133 So.2d 652, 655 (Miss. 1931). "There is a rebuttable presumption in favor of the agency decision and the burden of proof is on the party challenging that decision." *Montavalo v. Miss. Bd. of Medical Licensure*, 671 So.2d 53, 55 (Miss. 1996) (quoting *Bd. of Ed. of Alcorn County v. Parents & Custodians of Students at Rienzi Sch. Attendance Ctr.*, 168 So.2d 814, 818 (Miss. 1964)). The taxpayer bears the burden of proving it is entitled to relief. Miss. Code Ann. § 27-67-27.

¶17.    Pursue argues that the chancellor should have applied a *de novo* standard of review, rather than giving great weight and deference to the Commission, pursuant to statute:

> At trial of any action brought under this section, the chancery court shall give deference to the decision and interpretation of law and regulations by the commission as it does with the decisions and interpretation of any administrative agency, but it shall try the case de novo and conduct a full evidentiary judicial hearing on the issues raised. Based on the evidence presented at the hearing, the chancery court shall determine whether the

13

taxpayer has proven, by a preponderance of the evidence or a higher standard if required by the issues raised, that he is entitled to any or all of the relief he has requested.

Miss. Code Ann. § 27-77-7(4) (Rev. 2006).[8]  Pursue states in its brief that "[w]hile not specifically applicable to the present case . . . . this codification did not mark a change in the law but simply formally expressed it in the Mississippi Code."  While Pursue argues to this Court that it did not receive an evidentiary hearing, Pursue misses the fact that it filed its own motion for summary judgment.  In fact, the chancellor, at the conclusion of the hearing on the Commission's motion for summary judgment, invited Pursue to schedule its own hearing.

| | |
|---|---|
| MR. KNIGHT:[9] | Your honor, we did file a motion for summary judgment for Pursue, and we would like that to be considered by the Court.  But the rule, of course, requires ten days' notice, which we haven't met at this point.  Would the Court like to schedule another hearing for us to present that motion? |
| THE COURT: | That would be totally up to you.  If you want to do it, just get with my administrator and set it up for a hearing.  You're certainly entitled to a hearing. |

Thus, Pursue could have had a hearing on its motion for summary judgment; however, Pursue apparently chose not to have its motion for summary judgment set for a hearing, as there is no documentation in the record concerning it.  We will not hold the chancellor in error based on the record before us.

¶18.    Accordingly, this issue is without merit.

---

[8]Laws, 2005, ch. 499, § 4, eff from and after July 1, 2005.

[9]This is Pursue's attorney.

14

### III. WHETHER THE CHANCELLOR ERRED IN DETERMINING THAT THERE WERE NO OUTSTANDING ISSUES OF MATERIAL FACT.

¶19. Pursue argues that the chancellor erred in granting summary judgment in favor of the Commission and further argues that there were outstanding issues of material fact.[10] Pursue is estopped from arguing this issue, as it filed its own motion for summary judgment. "Because of judicial estoppel, a party cannot assume a position at one stage of a proceeding and then take a contrary stand later in the same litigation." *Dockins v. Allred*, 849 So. 2d 151, 155 (Miss. 2003) (citing *Banes v. Thompson*, 352 So. 2d 812, 815 (Miss. 1977)). In its motion for summary judgment, Pursue asserted, *inter alia*, that "[t]here is no issue of disputed fact which would prevent this Court from awarding summary judgment to Pursue under Rule 56, MRCP." Thus, in today's case, Pursue cannot, on the one hand, file its own motion for summary judgment asserting that there was no genuine issue as to any material fact and that it was thus entitled to a judgment as a matter of law, while on the other hand, arguing on appeal that the chancellor erred in granting the Commission's motion for summary judgment, since there did exist genuine issues of material facts, causing summary judgment to be improper.

¶20. We thus find this issue to be without merit.

---

[10]This is merely a different way of stating that there existed genuine issues of material fact.

15

## CONCLUSION

¶21.    Pursue's use of its own gas for its operations is subject to the use tax in the State of Mississippi.  Accordingly, we affirm the Rankin County Chancery Court's final judgment entered consistent with its grant of summary judgment in favor of the Mississippi State Tax Commission, and against the Pursue Energy Corporation, holding that Pursue owed the State of Mississippi use taxes for gas it used and consumed in its operations.

¶22.    **AFFIRMED**.

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.**