# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-SA-01574-SCT

*VINCENT J. CASTIGLIOLA, JR.*

*v.*

*MISSISSIPPI DEPARTMENT OF REVENUE*

DATE OF JUDGMENT:                08/15/2013
TRIAL JUDGE:                     HON. RAY HILLMAN MONTGOMERY
TRIAL COURT ATTORNEYS:           JESSICA B. McNEEL
                                 JAMES L. POWELL
                                 JON F. CARMER, JR.
COURT FROM WHICH APPEALED:       JACKSON COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:         JESSICA B. McNEEL
                                 MATTHEW E. PERKINS
                                 MICHAEL R. MOORE
ATTORNEYS FOR APPELLEE:          JON F. CARMER, JR.
                                 JAMES L. POWELL
NATURE OF THE CASE:              CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:                     REVERSED AND RENDERED - 04/30/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE WALLER, C.J., CHANDLER AND KING, JJ.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     The current case presents two issues: (1) who has the burden to prove use tax is applicable to a transaction, and (2) does the use of a broker make a casual sale taxable?

¶2.     To answer to the first question, the Mississippi Department of Revenue (MDOR) has the burden to prove a tax applies, and the taxpayer has the burden then to prove an exemption applies. It has long been recognized in Mississippi that MDOR carries the burden to show, as a threshold matter, that a particular taxing power applies to a particular transaction. Once

that is established, the burden shifts to the taxpayer to prove some statute or regulation exempts the transaction from taxation.

¶3.     The answer to the second question is no. Casual sales, with the exception of motor vehicles, are excluded from sales and use tax in Mississippi. Something more than the mere involvement of a broker must be shown before what would otherwise be a nontaxable casual sale becomes a taxable retail transaction.

¶4.     In the current case, because MDOR's argument for taxation is not supported by its own regulations and relies on an improper and erroneous application of Florida law, we find MDOR's position is arbitrary and capricious. Furthermore, MDOR admits the sale was from one individual to another, not in the ordinary course of business. Accordingly, we reverse summary judgment and render judgment in favor of the taxpayer.

## FACTS AND PROCEDURAL HISTORY

¶5.     Vincent Castigliola, a Mississippi resident, bought a yacht in Florida from Mark Fallon, an Ohio resident.  Fallon, who is not in the business of buying or selling boats, sold the boat to Castigliola, who also is not in the boat trade. This transaction involved marketing services from Galati Yacht Sales, a yacht broker, which Fallon hired.

¶6.     Castigliola did not pay sales tax on the boat in Florida or use tax in Mississippi.[1] Aggrieved, MDOR audited Castigliola and subsequently assessed use tax and penalties regarding the boat purchase, totaling $7,588. Castigliola challenged the tax and exhausted his administrative remedies without relief, and ultimately appealed to the Chancery Court of

---

[1] Castigliola subsequently did pay the tax and fees under protest, which is required for a taxpayer appeal.

Jackson County. Before the chancery court, Castigliola filed a motion for summary judgment, arguing that the sale was a casual sale and therefore not subject to Mississippi use tax.

¶7.    In support, Castigliola offered the bill of sale, which shows Fallon as the seller and Castigliola as the purchaser. Castigliola also offered the affidavit of Mike Fischer, a Galati representative. Fischer testified that Galati provided only marketing services to Fallon and was paid by commission. Fischer also stated that Galati never had title, possession, or control of the vessel, had no authority to negotiate on Fallon's behalf or to accept or reject any offers on Fallon's behalf, that Galati was not involved in negotiating the terms of the sale, which Castigliola and Fallon conducted directly, and that Fallon retained all risks of loss during the relevant time period.

¶8.    Castigliola further offered sworn admissions from MDOR acknowledging that Fallon, not Galati, was the seller and Castigliola was the purchaser. Castigliola also attached a printout of MDOR's online Frequently Asked Questions (FAQs) regarding use tax, in which one example reads:

> **What are my use tax responsibilities if I purchase a boat or airplane in another state?**
> Persons who purchase boats or airplanes from dealers in other states for use in Mississippi are required to pay Mississippi Use Tax on the purchase. (The rate is 7% for boats and 3% for airplanes.) . . . . *Individuals* purchasing boats or planes from a *non-dealer* in another state are *not subject to* Mississippi sale or use tax . . . .

(Emphasis added.)

¶9.    In response, MDOR argued that, under Florida law (Fla. Stat. Ann. § 212.05), Castigliola's purchase was a retail purchase, or at least Castigliola claimed it to be, therefore

3

it was subject to Mississippi use tax.[2] MDOR also argued that all brokered sales are taxable under Mississippi law. In support, MDOR cited Mississippi Code Section 27-65-3(f), which defines sales broadly, and argued that the admitted use of Galati proves Castigliola failed to show the boat sale was a casual sale. MDOR further noted that Galati was paid for its services via commission, that Galati prepared a Purchaser's and Seller's Closing Statement,[3] and that Castigliola signed a document titled "Suggested Format for Affidavit for Exemption of Boat Sold for Removal from the State of Florida by a Nonresident Purchaser" (hereinafter, "the Florida affidavit") that listed Galati as the "selling dealer." MDOR also argued that the taxpayer has the burden to show he is entitled to an exemption. Therefore, MDOR contended, Castigliola failed to meet his burden of showing the sale was a casual sale and not a sale made by a dealer during the ordinary course of the dealer's business.

¶10. After hearing oral arguments on the matter, the trial judge granted summary judgment in favor of MDOR. In his order, the trial judge noted that, under Florida law, the transaction was a retail sale and pointed to the Florida affidavit listing Galati as the "selling dealer." He further noted that Castigliola had the burden to show the transaction was a casual sale and that he had failed to meet that burden because the record clearly showed the transaction involved Galati, a business that regularly deals in boat sales.

---

[2] In its brief, MDOR attempted to recast the issue of Florida law as a factual issue. Admittedly, the question of applicability of the Florida statute at issue is fact-intensive, as discussed below, but that does not negate the fact that this clearly involves a question of law.

[3] These were simple, one-page documents that provided the purchase price, that Fallon was the seller and Castigliola was the purchaser, and that Galati was entitled to a commission.

4

¶11. Castigliola timely appealed, and we now address the following issues, which for convenience, we rephrase as follows:[4]

**1. Whether the chancellor erred in finding Castigliola had the burden to prove he was entitled to the casual-sale exemption.**

**2. Whether the boat purchase was subject to Mississippi use tax.**

### DISCUSSION

**1. Whether the chancellor erred in finding Castigliola had the burden to prove he was entitled to the casual-sale exemption.**

¶12. Whether the chancery court applied the correct burden of proof in an appeal of a Department of Revenue judgment is a question of law, which this Court reviews *de novo*. *Equifax, Inc. v. Miss. Dep't of Rev.*, 125 So. 3d 36, 41 (Miss. 2013), *reh'g denied* (Nov. 21, 2013), *cert. denied sub nom. Equifax, Inc. v. Miss. Dep't of Rev.*, 134 S. Ct. 2872, 189 L. Ed. 2d 833 (2014) (citing Miss. Code Ann. § 27-77-7(4) (Rev. 2009)); *Hankins v. Md. Cas. Co./Zurich Am. Ins. Co.*, 101 So. 3d 645, 652 (Miss. 2012).

¶13. Castigliola argues that MDOR had the burden to prove the transaction was taxable, claiming that casual sales are beyond the State's taxing authority. MDOR argues that Castigliola, as the taxpayer, has the burden to prove he is entitled to the casual-sales exemption, and that any distinction between "exemptions" or "exclusions" is merely semantic.

---

[4] Castigliola raised a third issue – whether Castigliola was denied his right to a full evidentiary hearing before the chancery court. But, because we find below that Castigliola is entitled to a judgment as a matter of law on other grounds, this issue is moot, and we do not address it.

¶14.    While this Court has never explicitly found a distinction between an exemption and an exclusion, our caselaw makes it abundantly clear that Mississippi has long recognized such a distinction.[5] First, under Mississippi law, it is clear that MDOR carries the burden to establish that a particular transaction falls within its statutory power to tax. *Stone v. Rogers*, 186 Miss. 53, 189 So. 810, 812 (1939); *see Fishbelt Feeds, Inc. v. Miss. Dep't of Rev.,* 158 So. 3d 984, 988-90 (Miss. 2014). If MDOR fails to establish that a transaction is within its taxing power, that transaction necessarily will be excluded from taxation. *See Rogers*, 189 So. at 812. Furthermore, taxes such as use taxes "are to be strictly construed against the taxing power." *Id.* "The power cannot be implied" and "[a]ll doubts must be resolved in favor of the taxpayer." *Id.*

¶15.    Second, once MDOR establishes that a transaction is subject to taxation, it is the taxpayer's burden to prove some statute or regulation would exempt the taxpayer from the tax. *See  Miss. State Tax Comm'n v. Med. Devices, Inc*., 624 So. 2d 987, 990-91 (Miss. 1993); *Fishbelt Feeds, Inc.,* 158 So. 3d at 991. Tax exemptions "must be construed most favorably to the taxing power, and the claimant has the burden of showing clearly his right

---

[5] The courts and the Legislature have used "exemption" and "exclusion," along with other variations such as "exception," synonymously in the past without drawing a clear distinction in their usage. *See, e.g., Fishbelt Feeds, Inc. v. Miss. Dep't of Rev.,* 158 So. 3d 984 (Miss. 2014). However, as noted above, it is clear from our prior holdings that this Court recognizes a distinction between a transaction that is beyond MDOR's statutory authority to tax and a situation where a statute would apply but for another statute or regulation that excludes the particular transaction from that tax statute. *Compare Miss. State Tax Comm'n v. Med. Devices, Inc*., 624 So. 2d 987, 990-91 (Miss. 1993), *with Stone v. Rogers*, 186 Miss. 53, 189 So. 810, 812 (1939); *see also Fishbelt Feeds, Inc.,*158 So. 3d 984.

to an exemption." *Miss. State Tax Comm'n v. Med. Devices, Inc.*, 624 So. 2d 987, 990-91 (Miss. 1993). Moreover,

> since exemptions from taxation are not favored, [the] general rule is that a grant of exemption from taxation is never presumed; on the contrary, in all cases having doubt as to legislative intention, or as to inclusion of particular property within [the] terms of [the exemption] statute, [the] presumption is in favor of [the] taxing power, and [the] burden is on [the] claimant to prove or establish clearly his right to exemption . . . .

*Id.*; *Fishbelt Feeds, Inc.,* 158 So. 3d at 991.

¶16.    This Court, in a unanimous opinion, recently analyzed a tax case using this exact framework. In *Fishbelt Feeds*, this Court was presented with the question of whether a tax statute applied, and if so, whether the transaction at issue fell within an exemption. *Fishbelt Feeds, Inc.,* 158 So. 3d at 988-92. This Court first found that MDOR successfully had shown that the franchise tax statute applied, noting that MDOR's interpretation of the statute was reasonable because it was supported by independent reference materials and, importantly, the taxpayer's own expert witness acknowledged that MDOR's interpretation was consistent with the definitions of the terms at issue. *Id.* at 989-90. Once the power to tax was established, the Court then found the taxpayer had the burden to prove the transaction fell within an exemption, clearly applying this Court's longheld view that there is a distinction between exemptions and transactions not subject to taxation. *Id.* at 990-92.

¶17.    Under this framework, we must first determine if the chancery court correctly found that Castigliola carried the burden in this case to prove that his boat purchase was exempt from the use tax.  Because the casual-sales exception is an exclusion and not an exemption, we find the chancellor applied the wrong legal standard. *See Harry D. Kantor & Son v.*

7

*Stone*, 203 Miss. 260, 263, 34 So. 2d 492, 494 (1948) (citing *Johnson v. Cass & Emerson*, 91 Vt. 103, 99 A. 633, 635 (1917) (providing sales tax is inapplicable to isolated or occasional sales)); *Rogers*, 189 So. at 812; *Stone v. Martin Veneer Corp.*, 183 Miss. 712, 184 So. 435, 437 (1938); *Warburton-Beacham Supply Co. v. City of Jackson*, 151 Miss. 503, 118 So. 606, 608 (1928) (implying that a plumber would not be subject to taxes on casual sales because they would not be part of his retail plumbing supply business).

¶18.    We reach this conclusion by first noting that, under Mississippi law, where an out-of-state transaction would have been subject to sales tax in Mississippi had it taken place within the state, that purchase is subject to the State's use tax. Miss. Code Ann. § 27-67-7(b) (Rev. 2010); *Pursue Energy Corp. v. Miss. State Tax Comm'n*, 968 So. 2d 368, 373 (Miss. 2007). Likewise, an in-state transaction not subject to sales tax would not be subject to use tax if it took place out of state. *See* Miss. Code. Ann. § 27-67-7(b);  *Pursue Energy Corp.*, 968 So. 2d at 373;  Miss. Admin. Code 35 IV. 3.02 (200) (providing that use tax is inapplicable to nonbusiness personal property acquired outside the state under conditions where a similar in-state acquisition would not be subject to sales tax).

¶19.    Second, sales tax does not apply to casual sales because they are not conducted within the parties' ordinary course of business. *Harry D. Kantor & Son v.* 34 So. 2d at 494; Miss. Admin. Code 35 IV. 3.02 (101). The sales-tax statute imposes a tax on the gross proceeds of sales on tangible personal property sold in the ordinary course of the seller's business.[6] Miss.

---

[6] The statute provides:

Except as otherwise provided in this section, upon every person engaging or continuing within this state in the business of selling any tangible personal

8

Code Ann. § 27-65-17(1) (Supp. 2014). It is therefore clear that isolated or occasional sales by persons not in the business of selling the personal property at issue fall outside the authority of Section 27-65-17(1). *See* Miss. Code Ann. § 27-65-17(1); ***Rogers***, 189 So. at 812; ***Martin Veneer Corp.***, 184 So. at 437; ***Harry D. Kantor & Son***, 34 So. 2d at 494; ***Warburton-Beacham Supply Co.***, 118 So. at 608; Miss. Admin. Code 35 IV. 3.02 (101). Thus, use tax is inapplicable to out-of-state casual sales. *See **Pursue Energy Corp.***, 968 So. 2d at 373; Miss. Admin. Code 35 IV. 3.02 (200).

¶20. Because the casual-sales exception to the State's sales tax applies equally to the State's use tax, the critical question in the current case regarding the burden of proof is whether that exception is an exemption or an exclusion. Here, Castigliola's claim that his boat purchase was excluded from Mississippi use tax is not only supported by our caselaw, as intimated above, it also is supported by MDOR regulations. Specifically, Mississippi Administrative Code 35 IV. 3.02 (101) provides:

> Isolated or occasional sales, except sales of motor vehicles, made by persons not regularly engaged in business *are not subject to* sales tax. *No sale . . . is taxable* under the Sales Tax Law if it is not made in the regular course of the business of a person selling tangible personal property.

Miss. Admin. Code 35 IV. 3.02 (101) (emphasis added). MDOR has further provided that "Use tax will not be *applicable* to non-business personal property acquired outside of this

---

> property whatsoever there is hereby levied, assessed and shall be collected a tax equal to seven percent (7%) of the gross proceeds of the retail sales of the business.

Miss. Code Ann. § 27-65-17(1) (Supp. 2014).

State under conditions where a similar acquisition in this State would *not be subject to* sales tax." Miss. Admin. Code 35 IV. 3.02 (200) (emphasis added).

¶21.    Moreover, this Court has found casual sales outside the scope of the sales-tax statute on multiple occasions. *See  Harry D. Kantor & Son*, 34 So. 2d at 494; *Rogers*, 189 So. at 812; *Martin Veneer Corp.,* 184 So. at 437. And, importantly, the above regulations and cases are consistent with a plain reading of the sales-tax statute which states only that it applies to business transactions. Miss. Code Ann. § 27-65-17(1) (Supp. 2014).

¶22.    Accordingly, we hold that the casual-sales exception to sales and use tax is an exclusion and not an exemption. Therefore, the trial court erred in finding Castigliola had the burden to prove the exception applied. *See Rogers*, 189 So. at 812; *Fishbelt Feeds, Inc.,* 158 So. 3d at 988-90. Rather, MDOR had the burden to prove Castigliola's boat purchase was within the State's statutory authority to tax. *See Rogers*, 189 So. at 812; *Fishbelt Feeds, Inc.,* 158 So. 3d at 988-90.

**2. Whether the boat purchase was subject to Mississippi use tax.**

¶23.    In considering a trial court's grant or denial of summary judgment, we apply a *de novo* standard of review. *Khurana v. Miss. Dep't of Revenue*, 85 So. 3d 851, 853 (Miss. 2012). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c).

10

¶24. Additionally, because the trial court applied the wrong legal standard, it is proper to examine the transaction at issue *de novo* applying the proper burden of proof. ***Quitman County v. State***, 910 So. 2d 1032, 1035 (Miss. 2005); ***McClendon v. State***, 539 So. 2d 1375, 1377 (Miss.1989) (noting this Court will not hesitate to reverse where the trial judge applied an erroneous legal standard).

¶25. However, when reviewing appeals of administrative-agency decisions, we will reverse such a decision only where a petitioner raises and proves "one or more of the following: the agency's decision was unsupported by substantial evidence, the agency's decision was arbitrary and capricious, the agency's decision was beyond the power of the administrative agency to make, [or] the agency's decision violated the complaining party's statutory or constitutional right." ***Equifax, Inc. v. Miss. Dep't of Rev.***, 125 So. 3d 36, 41 (Miss. 2013), *reh'g denied* (Nov. 21, 2013), *cert. denied sub nom*. ***Equifax, Inc. v. Miss. Dep't of Rev.***, 134 S. Ct. 2872, 189 L. Ed. 2d 833 (2014) (citing ***Buffington v. Miss. State Tax Comm'n***, 43 So. 3d 450, 453-54 (Miss. 2010)).

¶26. The question that this Court must answer is whether MDOR met its burden in showing that Castigliola's boat purchase was subject to Mississippi use tax. After considering the record under the standard of review discussed above, we find the answer is no.

¶27. In this case, MDOR argues the use of a broker, in and of itself, in what would otherwise be a casual sale, triggers use tax. The foundation of its argument is that, according to MDOR, taxation is the rule and exemptions are the exception, meaning Castigliola's purchase was subject to taxation unless he proves otherwise.

11

¶28. In support, MDOR cites Mississippi Code Section 27-65-3(f). This statute broadly defines a sale to "include[] the barter or exchange of property as well as the sale thereof for money or other consideration, and every closed transaction by which the title to taxable property passes shall constitute a taxable event." Miss. Code Ann. § 27-65-3(f) (Supp. 2014).

¶29. Next, MDOR argues that because Castigliola's purchase was a "sale" under Section 27-65-3(f), it was subject to the State's sales tax and use tax. The Mississippi sales-tax statute, as noted above, imposes a tax on the gross proceeds of retail sales of tangible personal property sold in the ordinary course of business. Miss. Code Ann. § 27-65-17(1) (Supp. 2014). It is MDOR's contention that this was a sale conducted in the ordinary course of Galati's business, and therefore it would be subject to sales tax had it transpired in Mississippi, and therefore it is subject to use tax.

¶30. While MDOR acknowledges that casual sales are not subject to use tax, it contends any broker involvement prevents a sale from being a casual sale. MDOR cites no authority in support.[7] Instead, MDOR argues that, because there is no explicit exemption or exception for brokered sales, Castigliola cannot prove his purchase was exempt from use tax. To bolster its position, MDOR argues that brokered sales meet the definition of a sale in Section 27-65-3(f), and therefore, given the deference to be given to MDOR's interpretation of law, its actions were not arbitrary or capricious.

---

[7] MDOR does cite an affidavit from one of its employees saying this is MDOR's position.

¶31. Lastly, MDOR argues that, because Castigliola's yacht purchase was classified as a retail sale under Florida law, it must be subject to Mississippi use tax. MDOR attempts to cast this argument as a factual issue, and not one of statutory application. MDOR argues that, as a factual matter, had this been a casual sale under Florida law, Castigliola would have owed sales tax in Florida, which he did not. MDOR continues that, because under Florida law, retail sales to out-of-state buyers are tax-exempt, and Castigliola did not pay Florida sales tax, the sale was a brokered sale and not a casual sale.

¶32. We find MDOR's argument unpersuasive. First, MDOR's position that taxation is the rule and exemptions are the exception is misplaced in the current context. As a threshold matter, under Mississippi tax law, MDOR first must show a transaction is within its taxing power, and "[a]ll doubts must be resolved in favor of the taxpayer."*Rogers*, 189 So. at 812. Once MDOR shows its authority to tax, the burden then shifts to the taxpayer to show that some statute or regulation exempts his transaction from the applicable tax. *See Med. Devices, Inc.*, 624 So. 2d at 990-91; *Rogers*, 189 So. at 812.

¶33. Second, while Castigliola's boat purchase qualifies as a sale under the definition of sale and thereby constitutes a taxable event, that alone is insufficient to impose a tax. Miss. Code Ann. § 27-65-3(f) (Supp. 2014); *see Miss. State Tax Comm'n v. Oscar E. Austin Trust*, 719 So. 2d 1172, 1174-75 (Miss. 1998) (finding a transaction did not constitute a taxable sale because the transaction was never closed as required under Section 27-65-3(f)); *see also Miss. State Tax Comm'n v. Bates*, 567 So. 2d 190, 193 (Miss. 1990). Simply showing that a transaction is a taxable event is insufficient to prove the transaction is subject

13

to a particular tax. *Compare* Miss. Code Ann. § 27-65-3(f) (Supp. 2014), *with* Miss. Code Ann. § 27-65-17(1) (Supp. 2014), *and* Miss. Code Ann. § 27-67-17 (Supp. 2014). Indeed, a taxable event is nothing more than a condition precedent required before a specific tax can be levied on the transaction. *See **Oscar E. Austin Trust***, 719 So. 2d at 1174-75 (finding the motor-vehicle sales tax was inapplicable to a transaction that did not meet the statutory definition of a sale under Section 27-65-3(f)). Accordingly, to the extent MDOR argues that, because the boat purchase was a sale under Section 27-65-3(f), it was Castigliola's burden to prove it was tax-exempt, we find MDOR's argument to be without merit.

¶34. We also find MDOR's argument that this sale would have been subject to sales tax, and thus, use tax, lacking. MDOR admits that Fallon, not Galati, sold the boat. Yet, MDOR contends Galati's involvement, in and of itself, prevented this from being a casual sale. This argument is supported by neither law nor sound reasoning. MDOR cites no authority for the proposition that the involvement of a third party in a casual sale makes the sale taxable. In fact, the courts that have considered this argument have concluded the opposite – the involvement of a third party, without an express designation of law stating otherwise, is deemed not to affect the status of a casual sale. *See, e.g., **Sherman v. Comm'r of Rev.***, 24 Mass. App. Ct. 64, 67, 506 N.E.2d 160, 162 (1987) (finding third-party performance of services in aid of the property owner in making an isolated sale still is excluded from sales tax as a casual sale); ***State v. Tysdal***, 303 Minn. 233, 237, 228 N.W.2d 230, 233 (1975) (finding agent's involvement does not alter the tax-exempt nature of the principal's

14

transaction); ***Doolittle v. Johnson***, 250 A.2d 822, 824 (Me. 1969) (finding boat broker's involvement did not render a casual sale taxable).

¶35.   MDOR's additional argument  that, because Castigliola's purchase was deemed a nontaxable retail sale in Florida, it is necessarily taxable in Mississippi, also misses the mark. The Florida statute at issue makes retail and casual boat sales subject to Florida sales tax but provides an exemption for out-of-state residents who make their purchase *through* a registered broker (not from a broker). Fla. Stat. Ann. § 212.05. The statute provides that a broker who facilitates the sale may be deemed the selling dealer for the purposes of the exemption. *Id.*

¶36.   It is this exemption that Castigliola took advantage of, and nothing in the record indicates that Castigliola did anything improper under Florida law. This exemption allowed Castigliola to buy the boat from Fallon through Galati and thereby enjoy an exemption from Florida tax.  *See* Fla. Stat. Ann. § 212.05.

¶37.   This process did require that Castigliola sign the Florida affidavit that notes Galati as the selling dealer. MDOR makes much of this affidavit and argues it proves this was a retail sale from Galati, or that Castigliola presented it as such to gain a tax advantage in Florida. But, because the statute explicitly provides that purchases made through a broker may be deemed retail sales for purposes of the Florida exemption, we find MDOR's argument to be without merit. *See* Fla. Stat. Ann. § 212.05. The trial court likewise erred in finding that the boat purchase was a retail sale under Florida law and therefore subject to Mississippi use tax. *See id.*

¶38. MDOR also contends that this boat was sold in the ordinary course of Galati's business. This argument is erroneous, if not disingenuous. MDOR admits that Fallon, not Galati, sold the boat. The only thing the record indicates that Galati sold in relation to this transaction was marketing services, which Fallon purchased. As a result, we find this argument lacks merit. The fact that Galati also is in the business of selling boats does not turn the sale of another service (marketing) into the sale of a boat. *See **Doolittle***, 250 A. 2d at 824.

¶39. Moreover, while this case presents the first opportunity this Court has had to address the casual-sales exception in the context of an out-of-state casual boat sale facilitated by a broker, at least one other state has addressed this very issue. In ***Doolittle v. Johnson***, the Maine Supreme Judicial Court held that sales tax could not be levied on casual sales between individuals simply because the sales were facilitated by a broker. ***Id.*** at 823-24.

¶40. In that case, sales tax was levied on transactions where sellers retained the services of a registered retail boat seller to market their boats in exchange for a commission. ***Id.*** at 823. The court found that, because the retailer's involvement in these transactions was not that of a seller, but that of a broker whose responsibility was to simply produce a buyer, the actual sales were nontaxable casual sales. ***Id.*** at 824. The court noted that the broker

> had no title or incidents of ownership; no sale was consumated [sic] until the buyer's offer was submitted to the owner where there was a counter-offer, or when the buyer's acceptance was made known to the seller and the seller accepted such counter-offer, if any, executed a bill of sale to the purchased and the boat was delivered. Any sale was a sale by the owner and not by the [broker] and in whatever way the [broker] participated in the processing of the sale, his efforts were merely preparatory to the sale and not a sale for the owner's account.

*Id.* The Court further noted that the tax could not be imposed simply because the broker was also a registered boat dealer. *Id.* In these transactions, the dealer only acted as a broker and did not sell the boats. *Id.* The dealer simply facilitated casual sales. *Id.* For these reasons, the court held the sales-tax assessments were null and void; that is, the sales tax did not apply. *See id.* Given the striking similarities between *Doolittle* and the current case, and the fact that *Doolittle* is consistent with Mississippi law, we find it persuasive.

¶41.　For the reasons discussed above, we find MDOR failed to meet its burden of showing that Castigliola's purchase from Fallon was subject to use tax and not excluded as a casual sale. MDOR's arguments to the contrary, as discussed above, are arbitrary and capricious. In fact, MDOR does not even dispute that Fallon, not Galati, sold the boat. Mississippi law provides that, with the exception of the sale of a motor vehicle, isolated or occasional sales are not subject to sales or use tax if the sale "is not made in the regular course of the business of a person selling tangible personal property." Miss. Admin. Code 35 IV. 3.02 (101); Miss. Code. Ann. § 27-67-7(b) (Rev. 2010).  It is abundantly clear from the record that Fallon and Castigliola were not in the boat trade, and that Galati's marketing service in no way made this transaction something other than a casual sale. *E.g., Doolittle*, 250 A. 2d at 824.

¶42.　Accordingly, we reverse the trial court's order in favor of MDOR and render judgment in favor of Castigliola. There are no genuine issues of material fact, and the tax assessment was unsupported by law or regulation and was therefore arbitrary and capricious. As a result, Castigliola is entitled to a judgment as a matter of law. *See* Miss. R. Civ. P. 56(c).

**CONCLUSION**

17

¶43.   For the foregoing reasons, we reverse the chancery court judge's grant of summary

judgment in favor of MDOR, and render a judgment in favor of Castigliola.

¶44.   **REVERSED AND RENDERED.**

   **DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.  RANDOLPH, P.J., NOT PARTICIPATING.**